Filed 2/27/19; Certified for Publication 3/6/19 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B288159 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA111918) |
| v. | |
| JOHN GAROFY CAMACHO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Olivia Rosales, Judge.  Reversed and remanded with instructions.

Danish A. Shahbaz for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Mathews and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant John Garofy Camacho (defendant) appeals from the denial of his motion pursuant to Penal Code section 1473.7,[1] to vacate his conviction of possession of marijuana for sale, on the ground that prejudicial errors were made which damaged defendant's ability to understand or defend against the adverse immigration consequences of his nolo contendere plea. During the pendency of this appeal, the Legislature amended section 1473.7. The parties filed supplemental briefs to address the clarified statute. We conclude that the evidence supported defendant's motion. We thus reverse with directions to the trial court to grant the motion to vacate defendant's conviction.

## BACKGROUND

In 2009 defendant was charged with violating Health and Safety Code section 11359, possession of marijuana for purposes of sale. He pled no contest to the charge under the terms of a plea agreement which provided for three years felony probation and community service. At the request of defense counsel, the court stated that if defendant returned in 18 months with a clear record, the court would "definitely consider" granting a motion pursuant to section 1203.4, to expunge the conviction.

In October 2016, a section 1203.4 motion was filed on defendant's behalf. The motion was granted, the plea and conviction were vacated and replaced with a plea of not guilty. The information was then dismissed. On February 14, 2017,

---

[1] At all times relevant, section 1473.7, subdivision (a)(1) allows a person no longer in custody to move to vacate a conviction or sentence which is invalid due to a "prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere."

All further statutory references are to the Penal Code, unless otherwise indicated.

2

defendant's petition under Proposition 64 was granted, and the charge was reduced to a misdemeanor (Health & Saf. Code, § 11361.8, subd. (f)).

In September 2017, defendant retained new counsel who filed the motion to vacate defendant's conviction of the original charges. After a hearing, the trial court denied the motion on January 19, 2018. Defendant filed a timely notice of appeal.

**Defendant's declaration in support of the motion**

Defendant declared he was born in Mexico in 1985 and brought to the United States by his grandmother when he was two years old. He attended Florence Avenue Elementary School, Edison Middle School, and Huntington Park High School. He married a United States citizen and has two United States citizen children, ages 5 and 11. He was employed as a tow truck driver. Defendant was arrested in August 2009 for possession of marijuana with intent to sell and released on bail. Defendant retained an attorney, who reviewed the police report and met with defendant. Defendant was told that his attorney would try to get a disposition with no jail time, but never discussed immigration issues or any settlement offers, nor was he instructed to consult with an immigration attorney.

When defendant entered his plea he heard the judge say the conviction could lead to deportation. However, his attorney told him everything would be fine. Defendant's attorney never told defendant of the consequences of a plea to Health and Safety Code section 11359, but told him on the day he entered the plea that defendant would not serve jail time if he pled that day. Counsel did not tell defendant that he could take the case to trial or discuss the possible outcome. Defendant declared: "I would have never taken the plea that I was given if I would have known that it would have not permitted me to obtain legal status in the United States. I have two United States citizen children and my

3

wife is a United States citizen. I cannot leave them here in the United States without being their [*sic*] to support them."

**Defendant's testimony**

Defendant testified at the hearing that he was brought to the United States at two years old, and has never left this country since then. As of the day of the hearing, he had been married to his United States citizen wife for 12 years, with two children, ages 11 and 5. In 2009, when defendant was arrested for possession of marijuana, he retained an attorney with whom he met five or six times in all, sometimes at counsel's office, sometimes at the courthouse. Defendant could not remember whether they discussed his immigration status during their first meeting, but he told counsel at one meeting that he was not born in the United States and was undocumented. When they did discuss his immigration issue it was mostly about avoiding jail time. Defendant thought that if he received jail time he would be deported.[2]

Defendant also testified that his attorney did not tell him that this charge would subject him to mandatory deportation or administrative removal without a court deportation hearing, or that the conviction would prevent him from ever becoming a legal permanent resident. Defendant was also never directed to consult with an immigration attorney to discuss his options. Defendant first learned of the severe immigration consequences when he retained his present counsel for the purpose of adjusting his immigration status based upon his marriage.

Defendant recalls that at the time of his plea he would have been fired from his job if he had gone to jail for 120 days, as

---

[2] At the plea hearing, the prosecutor stated, "If you are not a citizen of the United States your conviction in this case will result in your being deported, excluded from the U.S., and denied naturalization."

4

originally offered, but the no-custody disposition permitted him to keep his job. After probation was successfully completed defendant's attorney returned to court to have defendant's conviction expunged, and then in 2017, defendant successfully brought a Proposition 64 petition to have the conviction deemed a misdemeanor.

**Attorney's testimony**

Defendant's attorney testified that after being retained by defendant they did not discuss the charges until he reviewed the police report. He did not remember discussing immigration consequences with defendant or what was said, but they did discuss the subject, as counsel discusses immigration consequences with all his clients. He asks clients whether there are immigration issues and he notes that in their files, though he made no such notes in this case. Counsel then testified that he tells "every client [who is] here with a visa or a green card or illegal, you always have the risk of getting deported," but he does *not* keep notes about what he does or does not advise clients. A no-jail plea agreement was reached because defendant had a job and the facts of the case deserved a no-jail disposition.

Defendant's attorney could not recall whether he attempted to learn possible immigration consequences of defendant's plea. He told all clients that there was always a risk of getting deported. However, he did not remember doing so in this case. He could not remember what the consequences of a conviction of Health and Safety Code section 11359 were at the time of the plea, and thought that things had changed since then. He did tell defendant that the charge *could* subject him to deportation. His practice at that time was to tell clients that any felony or serious misdemeanor could get them deported, and that they should get the advice of an immigration attorney. He thought that it would help with defendant's immigration consequences if the charge

5

could be reduced to a misdemeanor, but the prosecutor would not agree to a misdemeanor because of the quantity of marijuana.

After review of the plea transcript where counsel stated to the court: "The other thing I did tell him, because of his immigration problems, maybe the court would entertain a motion to terminate early after maybe a year and a half and expungement, so that might help." Counsel recalled making the statement to the sentencing court, and explained that he intended to seek expungement of the conviction under section 1203.4, and thought that an expungement under that statute would "certainly help" with defendant's immigration consequences, "especially if it was knocked down to a misdemeanor." He also remembered telling defendant that "we're going to get it down to a misdemeanor and expunged early and maybe that will help him." He brought up the possibility of expungement in court in order to have it on the record that there were immigration reasons for expungement.

Counsel testified that although he thought it would help defendant's status, he had not investigated the effect of expungement in immigration cases, adding that he was unable to research immigration law because he was not an immigration lawyer. He usually advises all his clients to consult an immigration attorney before entering a plea, but he did not remember if told this to defendant. Counsel later consulted an immigration attorney regarding Proposition 64, and based on that, he told defendant that a Proposition 64 petition would help him.

**The ruling**

The trial court found the motion premature because no deportation proceedings had been initiated against defendant,

and denied the motion for that reason.[3] The trial court also denied the motion on the basis of its finding that counsel's representation did not fall below the standards of what was reasonably expected under the customs and practices at the time. The court noted that *Padilla v. Kentucky*[4] was decided the same year as defendant's plea. The court noted defendant's concern was not getting jail time, and found no facts indicating prejudice. The court concluded that there was no prejudice to defendant even if trial counsel had not provided reasonable representation with regard to immigration consequences, adding that it found no evidence to support defendant's current counsel's claim that there could have been an "immigration-safe" plea.

---

[3]     Respondent concedes that the trial court erred in its interpretation of section 1473.7, subdivision (b) as requiring the moving party to wait until the commencement of deportation proceedings or other adverse immigration consequences before filing the motion. The moving party may file a motion when facing *potential* as well as actual immigration consequences, so long as he does so with reasonable diligence after discovery of the basis for relief. (§ 1473.7, subd. (b)(1); see *People v. Morales* (2018) 25 Cal.App.5th 502, 509-511.)

[4]     See *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*), and discussion, *post*. In *Padilla*, the United States Supreme Court acknowledged that "[f]or at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea [citation]," and held that the Sixth Amendment guarantee of effective assistance of counsel required criminal defense attorneys to inform their non-citizen clients of the risks of deportation arising from guilty pleas. (*Id*. at pp. 369-372.) However, in 2013, the court clarified that its ruling in *Padilla* did not apply retroactively to defendants whose convictions became final before it decided *Padilla*. (*Chaidez v. United States* (2013) 568 U.S. 342, 344 (*Chaidez*).)

**DISCUSSION**

## I. The immigration consequences of defendant's plea

Because possession of marijuana for sale is an "aggravated felony" under federal law and was an aggravated felony at the time of defendant's plea (8 U.S.C. § 1101(a)(43)(B)), deportation and exclusion from readmission was and remains mandatory. (8 U.S.C. § 1227(a)(2); see *Moncrieffe v. Holder* (2013) 569 U.S. 184, 188.) Expungement under section 1203.4 has no effect on the federal immigration consequences of a conviction of such a felony. (*People v. Martinez* (2013) 57 Cal.4th 555, 560 (*Martinez)*, citing *Ramirez-Castro v. I.N.S.* (9th Cir. 2002) 287 F.3d 1172, 1174-1175.)

It is also probable that the reduction to a misdemeanor under Proposition 64 would also have no effect. (Cf. *United States v. Diaz* (9th Cir. 2016) 838 F.3d 968, 973-975 [federal recidivist enhancement unaffected by reduction under Proposition 47].)[5] In immigration proceedings when a deportable conviction has been vacated by the state court, it nevertheless remains a deportable conviction if it was vacated *solely* for rehabilitative reasons or to allow the convicted person to remain in this country. (*Pickering v. Gonzales* (6th Cir. 2006) 465 F.3d 263, 270.) On the other hand, while "[a] conviction vacated for rehabilitative or immigration reasons remains valid for immigration purposes, . . . one vacated because of procedural or

---

[5] In *People v. Bautista* (2004) 115 Cal.App.4th 229, 240 (*Bautista)*, the appellate court noted that according to an immigration expert who testified in that case, "[o]ne technique the attorney could have used to defend against adverse immigration consequences was to plead to a different but related offense. Another was to 'plead up' to a nonaggravated felony even if the penalty was stiffer."

substantive infirmities does not. [Citations.]" (*Id*. at p. 266, fn. omitted.)

## II. Pre-2019 interpretations of section 1473.7

As first enacted, effective January 1, 2017, section 1473.7, subdivision (a)(1), provided in relevant part that "[a] person no longer imprisoned . . . may prosecute a motion to vacate a conviction . . . [¶] . . . [that] is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." Section 1473.7, subdivision (e)(1), which remains unchanged, provides: "The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)."

In the two years that followed the enactment of section 1473.7, California courts uniformly assumed, as the trial court did here, that moving parties who claim prejudicial error was caused by having received erroneous or inadequate information from counsel, must demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing norms, as well as a reasonable probability of a different outcome if counsel had rendered effective assistance. Those courts either expressly or impliedly followed the guidelines enunciated in *Strickland v. Washington* (1984) 466 U.S. 668, 688, 694 (*Strickland*). (See, e.g., *People v. Espinoza* (2018) 27 Cal.App.5th 908, 914, 917; *People v. Tapia* (2018) 26 Cal.App.5th 942, 949, 951 [citing *Perez*]; *People v. Olvera* (2018) 24 Cal.App.5th 1112, 1114, 1116 (*Olvera*); *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 75-76 (*Ogunmowo*); *People v. Perez* (2018) 19 Cal.App.5th 818, 828, 831 & fn. 8.)

In *Olvera*, the appellate court noted that the parties disagreed whether professional norms imposed upon criminal defense attorneys an affirmative duty to investigate and advise on immigration consequences prior to the 2010 publication of *Padilla, supra*, 559 U.S. 356. The defendant in *Olvera* pointed to "evidence of such norms in American Bar Association . . . standards and practice guides dating from the 1990's [citation], and . . . to pre-2005 California decisions recognizing a duty to advise . . . ," such as *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1481-1482 (*Soriano*), *People v. Barocio* (1989) 216 Cal.App.3d 99, 103-104 (*Barocio*), and *Bautista, supra*, 115 Cal.App.4th at pages 238, 241. (*Olvera, supra*, 24 Cal.App.5th at p. 1117.) "The People counter[ed] that the United States Supreme Court did not recognize a Sixth Amendment duty to advise on collateral immigration consequences until [the *Padilla* decision] and that the court has since held that this 'new rule' is not retroactive. (*Chaidez*, [*supra*, 568 U.S. at pp.] 357-358)."[6] (*Olvera*, at p. 1117.) The *Olvera* court did not resolve the issue, but "note[d] that the California Supreme Court disavowed the collateral-direct consequences distinction in 2001 (nine years before *Padilla*), and expressly reserved the question whether there was at that time an affirmative duty to advise (*In re Resendiz* [(2001) 25 Cal.4th 230] at pp. 240, 248, 250)." (*Olvera, supra*, at p. 1117.)

## III. The Legislature's clarification of section 1473.7

In 2018, the Legislature passed Assembly Bill No. 2867, amending section 1473.7 effective January 1, 2019. (Stats. 2018,

---

[6]     The "new rule" was the question left open by the Supreme Court before *Padilla*, whether the Sixth Amendment required attorneys to inform their clients of the collateral consequences of a conviction, including immigration consequences. (*Chaidez, supra*, 568 U.S. at pp. 347, 350.)

ch. 825, § 2.)  The amended subdivision (a)(1) provides in relevant part:  "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence . . . [¶] . . . [that] is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.  *A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel*."  (Italics added.)

The construction and interpretation of a statute is a question of law that we consider de novo on appeal.  (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)  "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.  [Citation.]  We do not, however, consider the statutory language 'in isolation.'  [Citation.]  Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]'  [Citation.]  That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]'  [Citation.]  We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.'  [Citations.]"  (*People v. Murphy* (2001) 25 Cal.4th 136, 142.)

In enacting the measure, the Legislature declared among other things that its intent was "to provide clarification to the courts regarding Section 1473.7 . . . to ensure uniformity throughout the state and efficiency in the statute's implementation."  (Stats. 2018, ch. 825, § 1(b).)  To do so, the Legislature's declarations included the following:  "(c) This

11

measure shall be interpreted in the interests of justice and consistent with the findings and declarations made in Section 1016.2 of the Penal Code"; and, "(d) The State of California has an interest in ensuring that a person prosecuted in state court does not suffer penalties or adverse consequences as a result of a legally invalid conviction." (Stats. 2018, ch. 825, § 1(c) & (d).)

As the parties did not address the amended statute in their original briefs, we invited them to submit additional briefing on the effect, if any, of the amended statute and section 1016.2 on the issues in this appeal. Defendant contends that the clarified statute is applicable here and supports the relief requested. He points out that when the Legislature clarifies a statute, it is applied to existing law, although it is not technically retrospective as it is not considered a change in the law. (See *City of Redlands v. Sorensen* (1985) 176 Cal.App.3d 202, 211.) We agree. "'"An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute. . . ." [Citation.]' [Citation.]" (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243-244, fn. omitted.)

Respondent, on the other hand, contends that defendant's claim for relief should not be treated differently under the amended statute. Respondent contends that the only ground asserted for the motion was ineffective assistance of counsel and that defendant should be held to his original theory. Respondent also argues that defendant was foreclosed from claiming ineffective assistance of counsel as a ground for the motion. Respondent reasons that because section 1016.2 was intended to codify the *Padilla* requirements for effective assistance of counsel under the Sixth Amendment, it necessarily follows that such

12

codification implicitly includes the restriction on retroactivity enunciated in *Chaidez*, *supra*, 568 U.S. at page 344.[7]

Defendant's position is that the restriction on *Padilla*'s retroactivity did not apply to California. The Supreme Court's nonretroactivity decision was based upon its assessment that the *Padilla* decision "altered the law of *most jurisdictions*." (*Chaidez, supra*, 568 U.S. at p. 352, italics added.) As defendant reads *Chaidez,* retroactivity was thus rejected only for jurisdictions that did not *already* require defense counsel to investigate and advise about immigration consequences. Defendant argues that *Padilla* did not alter the law in California, as recognized by the Legislature in 2015, when section 1016.2 codified the older California decisions such as *Soriano*, published long before defendant's guilty plea, to support its statement that "California courts . . . have held that defense counsel must investigate and advise regarding the immigration consequences of the available dispositions, and should, when consistent with the goals of and informed consent of the defendant, and as consistent with professional standards, defend against adverse immigration consequences." (§ 1016.2, subd. (a), citing *Soriano*, *supra*, 194 Cal.App.3d 1470, *Barocio*, *supra*, 216 Cal.App.3d 99, and *Bautista*, *supra*,115 Cal.App.4th 229.)

Since we reject respondent's premise that defendant's sole theory was ineffective assistance of counsel, we need not decide whether California was an exception to the Supreme Court's finding that *Padilla* was not retroactive. Although defendant argued ineffective assistance of counsel, the motion was brought expressly on the grounds of section 1473.7, subdivision (a)(1), as

---

[7] As authority for this argument, respondent cites *People v. Gonzalez* (2018) 27 Cal.App.5th 738, 751. However, on January 23, 2019, the California Supreme Court decertified that decision for publication.

13

stated in the notice of motion: "This motion is being made pursuant to [section 1473.7] based on prejudicial error on the part of [defendant's counsel] damaging his ability to understand or defend against the adverse immigration consequences of his *nolo contendere* plea."

The Legislature has clarified that the moving party need not establish ineffective assistance of counsel. (§ 1473.7 subd. (a)(1).) It follows therefore, that even if the motion is based upon errors by counsel, the moving party need not also establish a Sixth Amendment violation as by demonstrating that "counsel's representation 'fell below an objective standard of reasonableness'. . .'under prevailing professional norms,'" as stated in *Padilla*, *supra*, 559 U.S. at pages 366, 368-369, quoting *Strickland*, *supra*, 466 U.S. at pages 688, 694. We thus reject respondent's reasoning that review must be limited to legal principles relating to the right to effective assistance of counsel. Defendant was required only to show that one or more of the established errors were prejudicial and damaged his "ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his] plea . . . ." (§ 1473.7, subd. (a)(1).) If it were otherwise, we would have to engage in an analysis that the Legislature never meant to require, which in turn, would render the statute meaningless.

The facts established by defendant's declaration and testimony showed not only counsel error, but also included defendant's own error in believing that a negotiated plea calling for no time in custody would avoid making him deportable, and in not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States. The trial court made no express or implied credibility determination for or against defendant, as the ruling was based upon a finding that defendant had not demonstrated ineffective

14

assistance of counsel or prejudice under *Padilla*, and therefore impliedly under the guidelines of *Strickland*. However, defendant's claims of error were supported by his former attorney's undisputed testimony that he told defendant only that the charge *could* subject him to deportation and that "we're going to get it down to a misdemeanor and expunged early and maybe that will help"; that he misunderstood the potential immigration consequences and the effect of expungement or reductions of felonies in immigration cases; and that he did not explore possible alternatives to pleading to an aggravated felony. Finally, defendant provided evidence of his misunderstanding at the time of his plea, due to his and counsel's errors. It was only after his conviction was expunged and reduced to a misdemeanor that defendant consulted an immigration attorney to apply for a permanent resident visa on the basis of his marriage to a United States citizen. He then learned of the true immigration consequences of his plea.

We conclude that defendant satisfied the required showing that errors damaged his "ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his] plea of . . . nolo contendere," as required by section 1473.7, subdivision (a). We turn to the question whether they were shown to be prejudicial.

**IV.  Prejudice**

Because the errors need not amount to a claim of ineffective assistance of counsel, it follows that courts are not limited to the *Strickland* test of prejudice, whether there was reasonable probability of a different outcome in the original proceedings absent the error. (See *Strickland*, *supra*, 466 U.S. at p. 694.) As the Legislature found and declared in section 1016.2, subdivision (f):

15

"Once in removal proceedings, a noncitizen may be transferred to any of over 200 immigration detention facilities across the country. Many criminal offenses trigger mandatory detention, so that the person may not request bond. In immigration proceedings, there is no court-appointed right to counsel and as a result, the majority of detained immigrants go unrepresented. Immigration judges often lack the power to consider whether the person should remain in the United States in light of equitable factors such as serious hardship to United States citizen family members, length of time living in the United States, or rehabilitation."

As our Supreme Court has found:

"'[C]riminal convictions may have 'dire consequences' under federal immigration law [citation] and that such consequences are "material matters" [citation] for noncitizen defendants faced with pleading decisions.' [Citation.] '[A] deported alien who cannot return "loses his job, his friends, his home, and maybe even his children, who must choose between their [parent] and their native country . . . .''' [Citation.] Indeed, a defendant 'may view immigration consequences as the only ones that could affect his calculations regarding the advisability of pleading guilty to criminal charges' [citation], such as when the defendant has family residing legally in the United States. 'Thus, even before the Legislature expressly recognized [in section 1016.5, subdivision (d)] the unfairness inherent in holding noncitizens to pleas they entered without knowing the consequent immigration risks [citation], we held that justice may require permitting one who pleads guilty "without knowledge of or reason to suspect [immigration] consequences" to withdraw the plea.' [Citation.]"

16

(*Martinez*, *supra*, 57 Cal.4th at p. 563, quoting *In re Resendiz, supra*, 25 Cal.4th at p. 250, and *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 209.)

The *Martinez* court concluded that because "the defendant's decision to accept or reject a plea bargain can be profoundly influenced by the knowledge, or lack of knowledge, that a conviction in accordance with the plea will have immigration consequences . . . , and because the test for prejudice considers what the defendant would have done, not what the effect of that decision would have been, a court ruling on a section 1016.5 motion may not deny relief simply by finding it not reasonably probable the defendant by rejecting the plea would have obtained a more favorable outcome." (*Martinez*, *supra*, 57 Cal.4th at p. 564.) Instead, the defendant may show prejudice by "convinc[ing] the court [that he] would have chosen to lose the benefits of the plea bargain despite the possibility or probability deportation would nonetheless follow." (*Id.* at p. 565; see also *Lee v. United States* (2017) __ U.S. __ [137 S.Ct. 1958] (*Lee*); *Ogunmowo, supra*, 23 Cal.App.5th at pp. 78-80.)

The principles found in *Martinez* and *Lee* apply equally to a prejudice analysis under section 1473.7. (See *Ogunmowo, supra*, 23 Cal.App.5th at p. 78.) As the United States Supreme Court pointed out, "[C]ommon sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. [Citation.]" (*Lee*, *supra*, 137 S.Ct. at p. 1966.) In *Lee*, the court found that the defendant had demonstrated a reasonable probability that he "would have rejected any plea leading to deportation -- even if it shaved off prison time -- in favor of throwing a 'Hail Mary' at trial." "Lee had lived in the United States for nearly three decades [since

leaving as a child], had established two businesses in Tennessee, and was the only family member in the United States who could care for his elderly parents -- both naturalized American citizens." (*Id*. at pp. 1967-1968.)

Similarly, in *Ogunmowo*, the defendant stated in a declaration supporting the defendant's motion to vacate the conviction under section 1473.7: "'I would have rejected the plea agreement had I known I could be subject to immigration sanctions. I moved my life 7,700 miles across the globe from Lagos, Nigeria to Los Angeles in 1980. I became a lawful permanent resident in 1988. I was not about to accept the possibility of deportation or inability to maintain my immigration status to be in the United States. I had already established my life in the United States.'" (*Ogunmowo*, *supra*, 23 Cal.App.5th at p. 73.) The evidence which was not disputed by the prosecutor showed that the defendant came to the United States when he was 17 years old, and during the 13 years after his guilty plea to a drug offense, he had four American citizen children with his American citizen partner, not knowing that his conviction made him automatically deportable. (*Id*. at pp. 69-71, 73.) The appellate court held that the defendant had met his burden of establishing prejudicial error by a preponderance of the evidence, and directed the trial court to permit him to withdraw his plea. (*Id*. at p. 81.)

Here, the facts are equally compelling although defendant did not have a permanent resident visa. He was brought to the United States over 30 years ago at the age of two, has never left this country, and attended elementary, middle, and high school in Los Angeles county. Defendant is, and at the time of his plea was, married to a United States citizen with an American citizen son, and now also an American citizen daughter. At the time of his plea, defendant was employed building pallets and now works

18

as a tow truck driver.  Defendant has no other adult criminal convictions.[8]  The prosecution did not dispute any of these facts.

We conclude that as defendant showed by a preponderance of evidence that he would never have entered the plea if he had known that it would render him deportable, the errors which damaged his ability to meaningfully understand, defend against, or knowingly accept the adverse immigration consequences of a plea were prejudicial.  The court was thus required to grant the motion to vacate the conviction as invalid.  (§ 1473.7, subd. (e).)  The appropriate remedy is to direct the trial court to grant the motion.  (See *Ogunmowo, supra*, 23 Cal.App.5th at p. 81; *People v. Espinoza, supra*, 27 Cal.App.5th at pp. 917-918.)

## DISPOSITION

The order denying the motion to vacate defendant's conviction is reversed and the matter is remanded to the superior court with instructions to grant the motion and to vacate the conviction.


_____, J.
                              CHAVEZ

We concur:

_____, Acting P. J.
ASHMANN-GERST

_____, J.
HOFFSTADT

---

[8]     Although in the trial court defendant was advised that his plea "*will* result" (italics added) in adverse immigration consequences, defendant presented sufficient evidence of his lack of understanding such that the court's advisement cannot be taken as irrebuttable proof that defendant likely would have entered his plea notwithstanding those consequences.

Filed 3/6/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B288159 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA111918) |
| v. | |
| JOHN GAROFY CAMACHO, | ORDER FOR PUBLICATION |
| Defendant and Appellant. | |

THE COURT:*

The opinion in the above entitled matter filed on February 27, 2019, was not certified for publication.

For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____
*ASHMANN-GERST, Acting P. J., CHAVEZ, J., HOFFSTADT, J.

1