Filed 11/7/25  P. v. Cabrera CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ADRIAN ESPINOZA CABRERA,<br><br>    Defendant and Appellant. | F088474<br><br>(Super. Ct. No. VCF260829A)<br><br><br>**OPINION** |

-ooOoo-

**THE COURT**<sup>*</sup>

APPEAL from an order of the Superior Court of Tulare County.  Nathan G. Leedy, Judge.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill, and John W. Powell, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Franson, Acting P. J., Snauffer, J. and Fain, J.[†]

†       Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Defendant Adrian Espinoza Cabrera appeals from the denial of his motion under Penal Code[1] sections 1018 and 1473.7, subdivision (a)(1) to vacate his 2014 plea of no contest to dissuading a witness, loansharking, extortion, inducing a minor to commit a felony, and misdemeanor making criminal threats. Cabrera's motion asserted his plea was "legally invalid due to prejudicial error damaging [his] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [the] conviction or sentence." (§ 1473.7, subd. (a)(1).)

The trial court denied the motion, concluding Cabrera failed to prove that he did not meaningfully understand the immigration consequences of his plea. Cabrera's uncorroborated declaration about his lack of understanding is directly contradicted by the record of his change of plea hearing. Cabrera's attorney informed the court that he had explained to Cabrera "that some of his charges will result in deportation proceedings being initiated and removal from the U.S." Shortly thereafter, Cabrera acknowledged his understanding of the consequences after being given a section 1016.5 advisement that, if he was not a citizen, his "plea of guilty or no contest will result in [his] being deported from the United States." His attorney later confirmed he had sufficient time to discuss the case and its ramifications with Cabrera and they "had many discussions on the options available and the potential consequences, and he's fully aware of all that."

As required by decisions of our Supreme Court, we have conducted an independent review to determine whether Cabrera established the requisite error in his understanding and prejudice from that error. (*People v. Espinoza* (2023) 14 Cal.5th 311, 319–320 (*Espinoza*); *People v. Vivar* (2021) 11 Cal.5th 510, 526 (*Vivar*).) Based on that independent review of the totality of the circumstances presented in the cold record, we find Cabrera's assertion that he "did not understand the immigration consequences of [his] plea would be deportation" is not credible. Accordingly, we conclude Cabrera has

---

[1] Unlabeled statutory references are to the Penal Code.

failed to prove by a preponderance of the evidence that he did not meaningfully understand the adverse immigration consequences of his plea. (§ 1473.7, subd. (a)(1).)

We therefore affirm the order denying Cabrera's motion to withdraw his plea.

## FACTS AND PROCEEDINGS

*Personal Details*

Cabrera was born in Mexico in March 1973. He is a Mexican citizen and, at the time of his offense and sentencing, was a lawful permanent resident of the United States. His wife (Sandra) and a younger brother (Gustavo) were codefendants in his criminal case. The record also shows he had a son who was 14 years old in October 2011.

Cabrera's May 2024 declaration in support of his motion to withdraw his plea provides few personal details regarding his family and nothing about his ties to the community. The declaration asserted: "I understood there was a possible deportation but that it was not certain that I would be removed because I was a lawful permanent resident, and I was here with my family and children, and since I had been here a long time, I could stay." The declaration did not identify his family members, did not state how long he had been in the United States, and did not state when he became a lawful permanent resident.

Cabrera's motion included factual details that were not supported by the record. For example, the motion asserted he immigrated to the United States in 1991, "grew up picking crops in the fields from a very young age and has little to no education." His motion also referred to the defendants in *People v. Camacho* (2019) 32 Cal.App.5th 998 (*Camacho*) and *People v. Mejia* (2019) 36 Cal.App.5th 859 and stated that "both had been here a long time, just like I had been living here in the United States since 1972 (over 50 years)." This factual assertion is obviously false because Cabrera was born in Mexico in 1973 and could not have been living in the United States since 1972. Moreover, we cannot rely on these statements because "factual assertions made by an

3.

attorney in a [motion or] reply are not evidence." (*People v. Carrillo* (2024) 101 Cal.App.5th 1, 7 (*Carrillo*).)[2]

*The Criminal Charges*

In 2016, we filed an opinion affirming the judgment against Cabrera. (*People v. Adrian Espinoza Cabrera* (May 16, 2016, F069701) [nonpub. opn.] (*Cabrera*).) Background information about the criminal charges against him is provided by the following quote from that opinion:

> **"Case No. VCF247612**
>
> "On the evening of November 14, 2010, Cabrera and two armed suspects knocked on the door of the house where J.H. and B.T. lived and called out the name 'Pedro.' When J.H. pulled back the curtain on a window to look outside, Cabrera struck him on the forehead with the butt of a shotgun through the window screen. Cabrera then told J.H., 'Come out. I'm go[ing to] kill you and your whole family.' While J.H. ran to the kitchen to get a knife, Cabrera broke open the front door. B.T. told Cabrera, 'Please[,] I have my babies.' The two other suspects then broke the front window and Cabrera fled with them in a car.
>
> "Cabrera was arrested on November 15, 2010.
>
> "On July 15, 2011, J.H. was in custody on an unrelated matter when he testified at Cabrera's preliminary hearing. As J.H. was being transported back to jail in the same van as Cabrera, Cabrera told J.H. that he was going to have J.H.'s wife raped and his family killed if J.H. continued with his testimony. Cabrera then sat down with two subjects and told them in Spanish that he would pay them to harm J.H.

---

[2]     In March 2024, two months before Cabrera filed his declaration, this court published *Carrillo*, which stated the "Supreme Court has advised that '[t]he more robust and inclusive a record, the greater the opportunity for effective persuasion and meaningful judicial review' of a section 1473.7 motion." (*Carrillo*, *supra*, 101 Cal.App.5th at p. 7, fn. 2.) *Carrillo* provided guidance to practitioners preparing declarations and superior courts evaluating those declarations by setting forth a nonexclusive list of 16 types of personal details that a robust declaration would include. (*Ibid*.) Cabrera's declaration ignored that guidance.

"On December 19, 2011, the district attorney filed a first amended information in case No. VCF247612, charging Cabrera with two counts of dissuading a witness (counts 1, 2/§ 136.1, subd. (c)(1)); threatening a witness (counts 3, 4/§[]140, subd. (a)); making criminal threats (counts 5, 6/§ 422); misdemeanor vandalism (count 7/§ 594, subd. (a)); misdemeanor cruelty to a child (counts 8, 9/§ 273a, subd. (b)); and battery (count 10/ § 242).

"***Case No. VCF260829A***

"In 2009, Cabrera lent Leonel Herrera $4,000 to open a business and charged him 10 percent interest per month, which translated to a monthly interest-only payment of $400.  The loan did not have an end date and required a monthly interest payment until Herrera was able to pay off the $4,000 principal in one lump sum.

"Around October 15, 2011, after having paid Cabrera approximately $10,000 on the loan, Herrera stopped making the payments.  Herrera and his family then began receiving calls from Cabrera's wife Sandra Cisneros, his brother Gustavo Cabrera (Gustavo), and Cabrera's fourteen-year-old son demanding payment of the interest on the loan.  Herrera took the calls as threats because the callers were angry, he had seen Cabrera physically assault people, and Cabrera knew Herrera's family.

"On November 7 or 8, 2011, Herrera paid the $4,000 principal amount to Cabrera's son.

"Ramon and Elida Rodriguez obtained a $2,000 business loan from Cabrera in September 2010, and also took over a $3,000 loan Cabrera had made to one of their sons in June 2010.  They paid Cabrera a total of $1,100 a month in interest on both loans.  Ramon estimated that he had paid $17,400 in interest on the loans.

"Cabrera also lent $3,000 to Juan Soriano in July 2006, at a rate that began at seven percent interest per month and increased with time.  In February 2011, Cabrera threatened to kill Soriano after he stopped paying interest on the loan.

"In March 2010, Cabrera lent Soriano's son $3,000 at 12 percent interest per month.

"In July 2007, Cabrera lent Alberto Soriano $2,000 at a monthly interest rate of 12 percent.  In January 2011, Cabrera lent Alberto an additional $1,000 at 12 percent interest per month.

"On January 2, 2014, the district attorney filed a first amended information charging Cabrera with five counts of loansharking (counts 1, 2, 6, 8, 10/Civ. Code, § 1916-3, subd. (b)); four counts of extortion (counts 3, 4, 7, 12/§ 520); and one count of inducing a minor to commit a felony (count 5/§ 653j, subd. (a)).

"***Change of Plea and Sentencing***

"On January 13, 2014, after the prosecutor amended count 5 in case No. VCF247612 to allege a misdemeanor charge of making criminal threats, Cabrera entered his no contest plea in both cases in exchange for a stipulated five-year prison term, the dismissal of the remaining counts, and the dismissal of an unrelated case.

"On March 25, 2014, the court granted Cabrera's request to substitute retained counsel.

"Around April 21, 2014, Cabrera's new defense counsel filed a motion to withdraw Cabrera's plea, alleging the trial court failed to 'properly obtain and find' a factual basis for Cabrera's pleas and that he was not given adequate time to consider the plea offer.

"On May 13, 2014, the court denied Cabrera's motion.

"On May 21, 2014, the court sentenced Cabrera to: the midterm of five years on his inducing a minor to commit a felony conviction, concurrent terms on his remaining felony convictions, and no time on his misdemeanor convictions for making criminal threats and cruelty to a child.

"Cabrera's appellate counsel … filed a brief which summarize[d] the facts, with citations to the record, raise[d] no issues, and ask[ed] this court to independently review the record. (*People v. Wende* [(1979)] 25 Cal.3d 436.) Cabrera [did not respond] to this court's invitation to submit additional briefing." (*Cabrera*, *supra*, F069701.)

## Outcome of Appeal

In Cabrera's appeal of his conviction, we conducted an independent review of the record and found no reasonably arguable factual or legal issues existed. (*Cabrera*, *supra*, F069701.) As a result, we affirmed the judgment.

6.

*The Plea Hearing*

At the January 13, 2014 change of plea hearing, Cabrera was represented by Gilbert Zavala, an attorney from Fresno, while Sandra and Gustavo were represented by attorneys from Visalia. Deputy district attorney Sean Sangree represented the People. The minute order from the hearing identifies Jose Torres was Cabrera's Spanish language interpreter.

At that hearing, the trial court, Zavala, and Sangree discussed the terms of the plea bargain offered to Cabrera. The court summarized the sentence it intended to impose by stating: "For purposes of today's proceedings, [Cabrera] should know that his overall commitment to prison would be five years." The following exchange occurred:

"[SANGREE]: That's correct.

"THE COURT: Anything else on [Cabrera]?

"[ZAVALA]: Your Honor, I have explained to [Cabrera] the potential consequences—

"THE COURT: I will take a change of plea and advise him of his consequences.

"[ZAVALA]: I would like to say this now so there won't be any issues tomorrow, that some of his charges will result in deportation proceedings being initiated and removal from the U.S.

"THE COURT: Thank you. I appreciate that."

During the trial court's advisement to Cabrera of the consequences of the proposed plea, the following exchange occurred:

"THE COURT: [Cabrera], if you are not a citizen of the United States, your plea of guilty or no contest will result in your being deported from the United States, excluded from admission to the United States, or denied naturalization as a United States citizen. [¶] Do you understand that?

"[CABRERA]: Yes.

7.

"THE COURT: [Zavala], although you recited for the record your advisement to him, I'd like for you to affirm that you advised your client of the immigration consequences of his change of plea.

"[ZAVALA]: I have, your Honor."

After the trial court obtained Cabrera's waiver of various rights, the court asked Zavala if he "had sufficient time to discuss these cases and all their ramifications with your client?" Zavala answered, "Yes, your Honor."

"THE COURT: Have you discussed with [Cabrera] his rights, defenses, and the possible consequences of his change of plea?

"[ZAVALA]: Yes, your Honor, at length. We've had many discussions on the options available and the potential consequences, and he's fully aware of all that.

"THE COURT: Do you represent that in your judgment, your client understands his rights?

"[ZAVALA]: Yes, he does.

"THE COURT: Do you consent to the change of plea and all representations made here in open court by your client?

"[ZAVALA]: Yes, your Honor."

The trial court proceeded to find a sufficient factual basis for the pleas and took Cabrera's no contest pleas. Specifically, in case No. VCF247612, Cabrera pleaded no contest to dissuading a witness (§ 136.1, subd. (c)(1)) and misdemeanor making criminal threats (§ 422). In case No. VCF260829A, he pleaded no contest to loansharking (Civ. Code, § 1916-3, subd. (b)), extortion (§ 520), and inducing a minor to commit a felony (§ 653j, subd. (a)).

In March 2014, the trial court received the report and recommendation of a probation officer. On May 21, 2014, Cabrera was sentenced to five years in state prison and given a total of 844 days of credit for actual time served and conduct credits.

In March 2024, Cabrera filed a motion to withdraw his plea pursuant to sections 1018 and 1473.7. The motion was supported by a declaration signed by Cabrera on February 26, 2024 at McFarland, California.[3] In April 2024, the trial court continued the hearing to May 8, 2024.

The district attorney's office filed an opposition to Cabrera's motion on the day of the hearing. The opposition argued "Cabrera's declaration was self-serving and was not credible, as he was advised he would be deported by the court and by his counsel." The motion was taken off calendar.

On May 13, 2024, Cabrera's counsel refiled the motion to withdraw along with a declaration signed by Cabrera that day at McFarland. The conclusions in the original and refiled motions asked the trial court to find a prejudicial misunderstanding and to find the "plea is legally invalid due to ineffective assistance of counsel." The clerk's transcript does not contain a proof of service for the refiled motion or for the original motion. Consequently, the record does not show the moving papers were served on Zavala, Cabrera's plea counsel, in accordance with Code of Civil Procedure section 416.90.[4]

At the June 3, 2024 hearing on the motion, the trial court informed the attorneys that it had read the motion, the opposition, and the appellate opinion affirming the conviction. The court asked the attorney appearing on behalf of Cabrera if he had other evidence or argument to present on the motion. The attorney replied, "No, submit on the

---

[3] The Golden State Annex, a medium-security immigration detention facility, is located in McFarland.

[4] Subdivision (g) of section 1473.7 provides: "A court may only issue a specific finding of ineffective assistance of counsel as a result of a motion brought under paragraph (1) of subdivision (a) if the attorney found to be ineffective was given timely advance notice of the motion hearing by the moving party or the prosecutor, pursuant to [s]ection 416.90 of the Code of Civil Procedure."

pleadings, your Honor." The deputy district attorney stated that, if there was no other evidence, he did not see how the motion could be granted.

The trial court then described the admonishment given to Cabrera at the plea hearing pursuant to section 1016.5 and stated it was "mindful that a [section] 1016.5 admonishment by the court is not a substitute for case-specific advice from counsel to a defendant regarding immigration consequences, but this particular advisement from the court is a little bit different than the typical [section] 1016.5 admonishment in that the deportation consequence was framed as not just a possibility but a certainty." The court stated the law required that it be persuaded there was a genuine error and the only evidence, Cabrera's declaration, did not appear to be credible given the contrary evidence in the record. The court mentioned the statements by Zavala on the record and the fact Cabrera's 2014 motion to withdraw his plea did not mention some of the claims raised in the current declaration, such as not being able to understand his interpreter. The court concluded the hearing by stating: "I don't find that there is evidence amounting to a preponderance standard that justifies granting this motion so the motion is respectfully denied." In August 2024, Cabrera appealed.

## DISCUSSION

I. APPLICABLE LEGAL PRINCIPLES

In 2016, the Legislature enacted section 1473.7 to make relief available "to certain immigrants who accepted pleas without understanding the immigration-related consequences of such decisions." (*Vivar*, *supra*, 11 Cal.5th at pp. 523, 528.) Section 1473.7 provides in relevant part:

> "(a)  A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence [if]:  [¶]  (1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.  A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."

10.

A.    Eligibility Requirements

To be *eligible* to seek relief from a "legally invalid" conviction under section 1473.7, subdivision (a)(1), a defendant must satisfy three statutory requirements. First, a defendant must show he "is no longer in criminal custody" for the challenged conviction.  (§ 1473.7, subd. (a).)  We find Cabrera has met this requirement because more than a decade has passed since he was sentenced to a five-year prison term and given credits totaling approximately two years and three months.

Second, a defendant must "establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal" or other adverse immigration consequences.  (§ 1473.7, subd. (e)(1); see *People v. Gregor* (2022) 82 Cal.App.5th 147, 158.)  Because Cabrera's May 2024 declaration states he was not "put into removal proceedings until recently" and was signed by him at McFarland, we find his conviction has the potential of causing removal.  Therefore, the second requirement has been met.

Third, the motion must be timely under provisions of subdivision (b) of section 1473.7.  (See *People v. Perez* (2021) 67 Cal.App.5th 1008, 1016.)[5]  Based on Cabrera's statement that he had not been put into removal proceedings until recently and the fact he was still at McFarland, we infer that, at the time his motion was filed, there had been no "[n]otice that a final removal order has been issued against [him]." (§ 1473.7, subd. (b)(2)(B).)  Because both of the statute's triggering events had not

---

[5]    Before January 1, 2019, it was accurate to state that a motion *must* be filed with reasonable diligence once both of the two triggering events had occurred.  (See *People v. Tapia* (2018) 26 Cal.App.5th 942, 949; *People v. Morales* (2018) 25 Cal.App.5th 502, 505.)  As explained in *Perez*, that standard was abrogated by the 2018 amendment of the statute's timeliness provision.  (*People v. Perez*, *supra*, 67 Cal.App.5th at pp. 1013–1014; see Stats. 2018, ch. 825, § 2.)  Currently, a motion can be deemed untimely if and only if the following conditions are satisfied:  (1) both triggering events have occurred; (2) the trial court finds the motion was not brought with reasonable diligence; and (3) the court then affirmatively exercises its discretion and, based on the totality of the circumstances, determines the motion was untimely.

11.

occurred, his motion must be deemed timely pursuant to section 1473.7, subdivision (b)(1).

In summary, we conclude Cabrera has satisfied the eligibility requirements. Therefore, he is entitled to have a court reach the merits of his motion and determine whether his "conviction or sentence is legally invalid" pursuant to section 1473.7, subdivision (a)(1).

B.      Substantive Grounds for Relief

To obtain relief, an eligible "defendant must first show that he did not meaningfully understand the immigration consequences of his plea." (*Espinoza*, *supra*, 14 Cal.5th at p. 319.)  The key to this element is "the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken." (*People v. Mejia*, *supra*, 36 Cal.App.5th at p. 866.)  "[T]he inquiry into a defendant's state of mind may often involve the weighing of credibility and circumstantial evidence." (*Espinoza*, at p. 325.)

Second, "the defendant must show that his misunderstanding constituted prejudicial error." (*Espinoza*, *supra*, 14 Cal.5th at p. 319.)  In this context, prejudice means "a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar*, *supra*, 11 Cal.5th at p. 529.)  A reasonable probability is merely a probability sufficient to undermine confidence in the outcome; it does not mean more likely than not. (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 324.)

C.      Standard of Review

Appellate courts conduct an independent review when assessing whether a defendant has demonstrated the requisite misunderstanding and prejudice. (*Espinoza*, *supra*, 14 Cal.5th at p. 319; *Vivar*, *supra*, 11 Cal.5th at p. 526.)  When, as here, a trial court's factual findings are derived entirely from documents (i.e., a cold record), the trial

court and appellate courts are in the same position and deference to the trial court's findings is unwarranted. (*Vivar*, at p. 528.) In such cases, the appellate court must decide, based on its independent judgment, whether the facts establish the two elements required by section 1473.7, subdivision (a)(1). (See *Espinoza*, at p. 320.) The existence of grounds for relief must be established "by a preponderance of the evidence." (§ 1473.7, subd. (e)(1); *Vivar*, at p. 517.)

## II. CABRERA DID NOT PROVE AN ERROR IN HIS UNDERSTANDING

A fundamental question in this appeal is the credibility of the factual assertions in Cabrera's May 2024 declaration about his state of mind when he entered his plea. That declaration described his state of mind by asserting (1) "I was never told I would be deported"; (2) "I *did not know* that I was going to be removed from the United States after I served my time in detention"; (3) "I *understood* that there was a possible deportation but that it was not certain that I would be removed because I was lawful permanent resident, and I was here with my family and children, and since I had been here a long time, I could stay"; and (4) "I *did not understand* that the immigration consequences of my plea would be deportation." (Italics added.)

His declaration explained his misunderstanding by asserting he was pressured into entering the plea; he was given only 15 minutes to enter the plea; Zavala, his plea counsel, told him he was getting time served and to answer "yes" whenever Zavala nodded his head; he could not understand his interpreter and only said "yes" when Zavala nodded his head; and he "was not guilty of the things they said [he] was guilty [of]." The declaration also asserted: "I have been translated this declaration from English to Spanish and know the content thereof."

Our analysis of credibility addresses particular statements, rather than the credibility of the declaration as a whole. The first statement we consider is Cabrera's claim that he did not understand his interpreter. The trial court was unconvinced by that

13.

claim, in part, because it was not raised in Cabrera's April 2014 motion to withdraw his plea. The record in this appeal does not contain the April 2014 motion and the supporting declarations. As a result, Cabrera has not shown the trial court erred in stating Cabrera had not raised the claim about the interpreter in his original motion. Consequently, we accept the court's statement as an accurate description of the April 2014 motion. Exercising our independent judgment as to the credibility of Cabrera's claim he did not understand his interpreter, we find that particular claim is not credible under the totality of the circumstances.

This lack of credibility provides some support for the inference that other factual assertions by Cabrera lack credibility, including his claim that "I was never told I would be deported." Our further evaluation of the credibility of this assertion, and the broader question of whether Cabrera understood the immigration consequences of his plea, considers the trial court's statement to Cabrera that his plea of "no contest *will result* in your being deported from the United States, excluded from admission to the United States, or denied naturalization as a United States citizen." (Italics added.) This oral advisement satisfied the court's obligation under section 1016.5, subdivision (a), which provides: "Prior to acceptance of a plea of guilty … to any offense punishable as a crime under state law, … the court shall administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged *may* have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (Italics added.)

The weight we give this advisement is necessarily guided by the "well established [principle] that the standard immigration advisement under section 1016.5 … does not replace the case-specific advice of counsel." (*People v. Padron* (2025) 109 Cal.App.5th 950, 962, quoting *Espinoza*, *supra*, 14 Cal.5th at p. 320 [" 'general advisement under

14.

section 1016.5' does not establish meaningful understanding of immigration consequences"]; see *People v Patterson* (2017) 2 Cal.5th 885, 896.)

Here, the trial court modified the standard advisement to state the plea "will result in your being deported," which informed Cabrera of mandatory consequences. We recognize this more strongly worded advisement does not bar a defendant from proving that he or she did not meaningfully understand the consequences of a plea. The underlying rationale is that even strongly worded advisements do "not absolve defense counsel of the duty to advise of immigration consequences." (*People v. Manzanilla* (2022) 80 Cal.App.5th 891, 906.) Consequently, "[e]ven where the [*Tahl*[6]] form says that the defendant 'will' be deported, it does not substitute for the advice of counsel, and it is not a categorical bar to relief." (*Ibid.*; see *People v. Rodriguez* (2021) 60 Cal.App.5th 995, 1003–1004 [defendant did not meaningfully understand immigration consequences despite signing form that stated " 'this plea … *will* result in my removal/deportation' "].) The same holds true when the advisement that deportation *will result* is oral and when both a written and an oral advisement are given. (*People v. Lopez* (2021) 66 Cal.App.5th 561, 577–578 [strongly worded *Tahl* form and oral advisement]; see *Camacho*, *supra*, 32 Cal.App.5th at p. 1011, fn. 8 [even though defendant "was advised that his plea '*will* result' … in adverse immigration consequences," he presented sufficient evidence of his lack of understanding to warrant section 1473.7 relief].)

Based on the foregoing principles about advisements and the totality of the circumstances test, we next consider the case-specific advice Cabrera received from counsel. The transcript from the change of plea hearing shows that, before the trial court gave Cabrera the modified section 1016.5 advisement, Zavala stated on the record that he had advised Cabrera he would be deported from the United States. This statement and

---

**6** *In re Tahl* (1969) 1 Cal.3d 122, overruled on other grounds in *Mills v. Mun. Court for the San Diego Judicial Dist.* (1973) 10 Cal.3d 288, 291, 307.

15.

Zavala's other statements about discussing the consequences of the plea with Cabrera are credible because they are consistent with applicable law at that time. In *Padilla v. Kentucky* (2010) 559 U.S. 356, the United States Supreme Court concluded the Sixth Amendment requires defense counsel to provide affirmative and competent advice to noncitizen defendants regarding the potential immigration consequences of their criminal cases. (*Carrillo*, *supra*, 101 Cal.App.5th at pp. 17–18.) Before *Padilla*, the Sixth Amendment had not been interpreted to impose an obligation on defense counsel to affirmatively advise a defendant of the immigration consequences of a conviction. (*Carrillo*, at p. 17.) Therefore, Zavala's statement that he had explained to Cabrera "that some of his charges will result in deportation proceedings being initiated and removal from the U.S." is credible because (1) it is consistent with the obligations imposed by *Padilla* on defense counsel and (2) those obligations had been in place for nearly four years at the time of the change of plea hearing.

Based on our independent evaluation of Cabrera's credibility and the totality of the circumstances, we conclude Cabrera has not proven by a preponderance of the evidence that he failed to meaningfully understand the immigration consequences of his 2014 no-contest plea. Accordingly, he has not established his conviction was "legally invalid" under section 1473.7, subdivision (a)(1) and his motion must be denied. It follows that we need not address whether Cabrera demonstrated the requisite prejudice.

In closing, we note our evaluation of the totality of the circumstances considered the absence of certain types of evidence, yet recognized that a defendant "seeking relief under section 1473.7 is not required to provide the declaration of plea counsel" or "submit contemporaneous documentation from the time of the plea." (*Espinoza*, *supra*, 14 Cal.5th at p. 325 [inclusion of counsel's declaration in *Vivar* did not suggest a minimum requirement for establishing prejudicial error].) Instead, a court's consideration of the totality of the circumstances involves a case-by-case evaluation of the record. (*Espinoza*, at p. 325.) Here, Cabrera attempted to carry his burden of proof

based primarily on his own declaration that directly contradicted statements Zavala made on the record. His moving papers did not assert Zavala was unavailable or otherwise explain why he was not called as a witness or did not provide a declaration. While these omissions are far from decisive, they distinguish this case from those in which plea counsel testified or submitted a declaration. (See *People v. Lopez*, *supra*, 66 Cal.App.5th at p. 578 ["most important fact about the immigration paragraph in the *Tahl* form is that both trial counsel and [the defendant] agree there was no discussion of it"]; *Camacho*, *supra*, 32 Cal.App.5th at p. 1009 [defendant's former attorney testified "he told defendant only that the charge *could* subject him to deportation and that 'we're going to get it down to a misdemeanor and expunged early and maybe that will help' "].) Stated from another perspective, Cabrera did not present evidence corroborating the assertion in his declaration that he did not understand the immigration consequences of his plea. (See generally, *Espinoza*, *supra*, 14 Cal.5th at p. 316 [use of objective evidence to corroborate defendant's assertions]; *Vivar*, *supra*, 11 Cal.5th at p. 530 [defendant asserting an inadequate advisement of immigration consequences required to corroborate such assertions with objective evidence].)

## DISPOSITION

The order denying Cabrera's section 1473.7, subdivision (a)(1) motion is affirmed.