Filed 6/17/21  P. v. Longoria CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>AUDON SOTO LONGORIA,<br><br>  Defendant and Appellant. | F079267<br><br>(Super. Ct. No. 15CR-00301)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Merced County.  David W. Moranda, Judge.

Law Offices of Michael Poole and Michael Poole for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill, David Andrew Eldridge, and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

On May 16, 2014, Audon Soto Longoria, with the assistance of a Spanish language interpreter, pled guilty to felony assault likely to produce great bodily injury

(Pen. Code,[1] § 245, subd. (a)(4)). The factual basis for the plea was confirmed in open court. While under the influence of alcohol, Longoria placed his hands around the neck of his girlfriend, pregnant with their expected child, limiting her ability to breathe.

In lieu of a possible four-year prison term, Longoria was sentenced to 36 months of probation, with 180 days in custody, and two counts under section 11377, subdivision (a), and section 243, subdivision (e)(1) were dismissed.

In 2017, the Board of Immigration Appeals determined felony assault is a crime involving moral turpitude and subjects an individual to deportation. On that basis, Longoria moved pursuant to section 1473.7 to vacate his guilty plea and argued he did not know the conviction "provided serious immigration consequences."

The trial court[2] denied Longoria's motion to vacate, finding Longoria had not met his burden of proof and otherwise understood the immigration consequences. We affirm.

## BACKGROUND

At the change of plea hearing, the court informed Longoria, "With respect to the consequences of a guilty or no contest plea, you need to know this: If you're not now a citizen of the United States, this conviction can and will result in your deportation, a denial of your right to citizenship in the future by way of naturalization, and a denial of your right to reenter the United States." Longoria affirmatively acknowledged the warning and subsequently pled guilty to felony assault (§ 245, subd. (a)(4).

In a written section 1473.7 motion to vacate, Longoria argued he "did not meaningfully understand the immigration consequences of []his plea and his attorney did not defend against the serious immigration consequences because[,] at the time of his plea, the law was not clear" felony assault was a deportable offense. He also claimed his

---

[1] All undesignated statutory references are to the Penal Code.

[2] The conviction occurred in Santa Cruz County. The motion to vacate was heard in Merced County because that is where Longoria's matter was ultimately transferred. (See § 1203.9) The venue issue is not raised on appeal.

2.

`

"[d]efense attorney could not have provided affirmative and competent advice … regarding the potential immigration consequences … because the case law was not settled until after the plea."

The motion included a declaration from Longoria. In the declaration, Longoria stated his attorney told him the "conviction should not have serious immigration consequence[s] since the felony could be reduced to [a] misdemeanor and be expunged." He added, had he known the immigration consequences, he would have rejected the plea bargain and would have pursued a different resolution.

At the motion hearing, Longoria testified and essentially restated his declaration: Had he known the consequences he "would have waited for another offer or [went] to trial" because "the most important thing" to him was staying with his "wife and kids" in the United States. He acknowledged the plea judge provided an immigration warning but did not hesitate to plead upon hearing it due to his attorney's indication he should accede to the warning.

The court denied the motion for two reasons. One, it found Longoria did not meet the burden of proof. Two, it found he "was informed of the consequences of his plea [and he] said he understood them."

## DISCUSSION

Section 1473.7 permits a person to "file a motion to vacate a conviction" of "[t]he conviction is … legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473.7, subds. (a) & (a)(1).) Prejudicial error "means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*People v. Vivar* (2021) 11 Cal.5th 510, ___, [2021 WL 1726827, at *10] (*Vivar*).)

`

A trial court's decision to grant or deny a section 1473.7 motion is reviewed independently. " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] … ' "[I]ndependent review is *not* the equivalent of de novo review ...." ' [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. [Citations.] … In section 1473.7 proceedings, appellate courts should … give particular deference to factual findings based on the trial court's personal observations of witnesses. [Citation.] … Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Vivar, supra,* 11 Cal.5th at p. ___, [2021 WL 1726827, at *8], fn. omitted.)

"As the United States Supreme Court has observed, 'Immigration law can be complex,' and there are 'numerous situations in which the deportation consequences of a particular plea are unclear or uncertain.' " (*People v. Patterson* (2017) 2 Cal.5th 885, 898.) Longoria admits this is a case involving uncertainty but nonetheless seeks to vacate his plea on the basis his attorney "could not have provided affirmative and competent advice … because the case law was not settled until after the plea."[3]

In our view, it is unclear whether a post-plea change in immigration law is the sort of prejudicial error contemplated by the Legislature in enacting section 1473.7. We assume here that Longoria has demonstrated that there was error damaging his ability to meaningfully understand, defend against, or knowingly accept the actual or potential immigration consequences of the plea. However, as *Vivar* and other cases hold, the error

---

[3] In the written motion, Longoria also argued his plea counsel was ineffective for not "investigating and preparing [his] case and possible immigration consequences" and for failing to "properly investigate critical questions, facts and legal authorities essential to his being able to advise defendant to plead guilty." These arguments are entirely conclusory, unsupported by any evidence, and not repeated on appeal.

`

must also be prejudicial, based upon the totality of the circumstances. Our Supreme

Court in *Vivar* explains as follows:

> "So: showing prejudicial error under section 1473.7,
> subdivision (a)(1) means demonstrating a reasonable
> probability that the defendant would have rejected the plea if
> the defendant had correctly understood its actual or potential
> immigration consequences. When courts assess whether a
> petition has shown that reasonable probability, they consider
> the totality of the circumstances. (*Lee* [*v. Superior Court*
> (2017)] 137 S.Ct. [1958], 1966 [(*Lee*)].) Factors particularly
> relevant to this inquiry include the defendant's ties to the
> United States, the importance the defendant placed on
> avoiding deportation, the defendant's priorities in seeking a
> plea bargain, and whether the defendant had reason to believe
> an immigration-neutral negotiated disposition was possible.
> (See *id.* at pp. 1967-1969; ([*People v.*] *Martinez* [(2013)]
> 57 Cal.4th [555,] 568.) (*Vivar, supra,* 11 Cal.5th at p. ___,
> [2021 WL 1726827, at *17].)

*Circumstances of the Plea*

In January 2019, Longoria filed a motion to withdraw his guilty plea pursuant to

section 1473.7, arguing that he did not meaningfully understand the immigration

consequences of his guilty plea, because (1) his attorney failed to defend him against the

immigration consequences (i.e., find another plea that could have avoided mandatory

deportation or go to a trial with a "Hail Mary"), (2) the law was not clear that a

section 245, subdivision (a)(4) conviction was deportable, and/or the law changed, and

(3) his attorney failed to give accurate advice of potential immigration consequences.

The motion was supported by a two-page declaration from Longoria which essentially

stated the following:

> (1) His attorney informed him the plea offer was favorable in
> terms of punishment and the conviction should not have
> serious immigration consequences since the felony could be
> reduced to a misdemeanor and expunged;

(2) At the time of the plea, he did not know the conviction could cause inadmissibility years after the plea and become "disastrous" for him;

(3) His attorney did not provide affirmative and competent advice to him regarding the potential immigration consequences in his criminal case;

(4) His attorney did not investigate, advise him on adverse immigration consequences of the proposed disposition, or defend against potential adverse immigration consequences of the guilty plea;

(5) When his attorney presented documents for his signature, he asked for time to think about it before signing but was told that if he did not take the offer, the district attorney would not offer the same deal again;

(6) He did not have an opportunity to speak with anyone about the immigrations consequences of the plea;

(7) He felt he had viable defenses to the allegations alleged in the complaint;[4]

(8) At the time of his plea, he would not have accepted the plea bargain had he known that conviction of such a charge would have immigration consequences. The determinative factor in his decision to accept or reject a plea offer was not having immigration consequences;

(9) Had he been properly advised, he would have sought to negotiate a different bargain that would not have resulted in deportation;[5] and

(10) He had strong family, community ties, obligations, and opportunities in the United States at the time of his plea, and

---

[4] Longoria has never identified any possible defenses to the charges or the likelihood of success at trial.

[5] Longoria has never offered any evidence of a possible immigration-neutral plea on these facts.

he and his family would have faced extreme hardship had he been forced to return to Mexico.

Longoria also briefly testified at the March 2019 hearing that had he known the immigration consequences, he would not have accepted the plea offer. As an alternative, "[He] would have waited for another offer or go[ne] to trial, because the most important thing in this country for [him was his] wife and kids. And to separate us, we would both suffer, them and myself."

Longoria also acknowledged under oath at the hearing that he had been advised by the court prior to entering his plea that he "can and will be deported as a result of the plea." He did not respond or ask any questions of the judge "because that's what my attorney said to do …." Longoria said he relied upon his attorney for guidance.

Longoria also asked the court to take judicial notice of records relating to the 2016 disbarment proceedings against his original trial counsel, showing that his lawyer: (1) Failed to file motions to reduce the felony to a misdemeanor and expunge the conviction per section 1203.4; and (2) failed to respond to his client's reasonable status inquiries over a two-year period.

The trial court denied the motion, finding that Longoria had not met his burden of proof by a preponderance of the evidence and that he "was informed of the consequences of his plea. He said he understood them."

*Prejudice Analysis*

To establish "prejudicial error" under section 1473.7, a person need only show by a preponderance of the evidence that: (1) he did not "meaningfully understand" or "knowingly accept" the actual or potential adverse immigration consequences of the plea; and (2) had he understood the consequences, it is reasonably probable he would have instead attempted to "defend against" the charges by rejecting the plea deal, i.e., he was prejudiced because he did not meaningfully understand the consequences of the plea.

`

On the first element, the type of "error" required by section 1473.7, a defendant need not show *Strickland*[6] error with ineffective assistance of counsel, but only his own error in not understanding or knowing his plea has actual or potential adverse immigration consequences. In other words, the "defendant's own error" in misunderstanding—or complete failure to anticipate—the immigration consequences of a plea bargain is an independent basis sufficient to grant relief under section 1473.7. (*People v. Mejia* (2019) 36 Cal.App.5th 859, 870-871 (*Mejia*); *People v. Camacho* (2019) 32 Cal.App.5th 998, 1009 (*Camacho*).)

On the second element, to show prejudice, a defendant must show that had he understood the consequences, it is reasonably probable he would have instead attempted to "defend against" the charges by rejecting the plea deal.

In conducting the prejudice analysis, the question is whether Longoria has shown, by a preponderance of the evidence, that he would not have entered the plea had he known it would render him deportable. The trial court concluded he had not met his burden on these issues *and* that he had been advised of the deportation consequences of his plea, and said he understood them.

As set forth in *Vivar*, the main factor in the prejudice analysis is evidence of a defendant's strong or significant ties to this country—where the threat of deportation can outweigh the threat of significant jail time, i.e. evidence supporting the inference that the defendant would not have pled guilty had he understood he would lose those ties, particularly his family, as a consequence. This is what is lacking in Longoria's declaration and testimony.[7]

---

[6] *Strickland v. Washington* (1984) 466 U.S. 668.

[7] Compare the conclusory language in Longoria's evidence in contrast to the detailed evidence set forth in *Vivar, supra,* 11 Cal.5th at p. ___ [2021 WL 1726827, at *9]; *Mejia, supra,* 36 Cal.App.5th at pp. 872-873; and *Camacho, supra,* 32 Cal.App.5th at p. 1011.

`

Perhaps most important is the issue of credibility and the role it has played in each of these cases. The *Vivar* trial court was examining a cold record, with no live witnesses or testimony, hence, no real credibility issues were presented when the Supreme Court independently reviewed the evidence. In *Mejia* and *Camacho*, the trial court made no relevant implied or express credibility determinations, thereby allowing the appellate court to independent review the evidence. However, in this case, Longoria testified. Some testimony mirrored his declaration, but the testimony about why he failed to object or ask questions when he was read the deportation admonition was impliedly rejected by the trial court's ruling and casts doubt on other evidence offered in his declarations. We defer to the trial court's implied credibility determinations in affirming the denial order.

Additionally, we note that Longoria does not argue plea counsel should have been aware the law was unsettled. In any event, he has offered no objective evidence to corroborate his statement counsel either did not properly advise him or that counsel affirmatively misadvised him about expungement. (See, e.g., *Nunez-Reyes v. Holder* (9th Cir. 2011) 646 F.3d 684, 688-690 [convictions expunged under state law remain deportable].)

Indeed, Longoria's entire presentation to the court was based on his own uncorroborated statements. "[W]hen a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences, we have long required the defendant corroborate such assertions with ' "objective evidence." ' " (*Vivar, supra,* 11 Cal.5th at p. ___, [2021 WL 1726827, at *10].) There is little corroborating evidence in this case.[8]

---

[8] Plea counsel did not submit a declaration and did not testify at the motion hearing. Longoria did, however, argue his plea counsel "was disbarred partially because of this case." Based on references in the record, Longoria apparently filed a request the court judicially notice a document relating to the disbarment order. The formal request was not included in the record on appeal. On our own motion, we judicially notice

`

Finally, the trial court impliedly found Longoria lacked credibility by determining he did not satisfy the burden of proof. That finding is entitled to deference because it is supported by the lack of corroborating evidence *and* based on the trial court personally observing Longoria's testimony. (*Vivar, supra,* 11 Cal.5th at p. ___, [2021 WL 1726827, at *8] ["appellate courts should … give particular deference to factual findings based on the trial court's personal observations of witnesses."]; *People v. Uribe* (2011) 199 Cal.App.4th 836, 856 [trial court's implied resolution of credibility entitled to deference if supported by the record].) For all these reasons, we conclude the court did not err in denying the motion to vacate the plea. (See *Lee, supra,* 137 S.Ct. at p. 1967 ["Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."].)

---

disbarment order number 16-O-16706, filed on June 1, 2018. (Evid. Code, § 452, subd. (d).)

In relation to Longoria, the disbarment order found plea counsel violated four rules. One, counsel improperly accepted "$3,000 from a third party as compensation for representing a client without obtaining the client's informed written consent." Two, counsel "failed to file a motion to reduce a felony to a misdemeanor pursuant to Penal Code section 17(b); and failed to file a motion for expungement pursuant to Penal Code section 1203.4." Three, counsel failed "to respond to his client's reasonable status inquiries over a two-year period." Four, counsel failed to "provide a substantive response … to the allegations of misconduct being investigated …."

It is true the second reason describing failure to pursue expungement could corroborate Longoria's argument plea counsel misled him about the benefits to expungement. However, we decline to read into counsel's failure to pursue expungement an express promise regarding immigration clemency.

`

## DISPOSITION

The judgment is affirmed.

                                                         SNAUFFER, J.

WE CONCUR:


FRANSON, Acting P.J.


SMITH, J.