Filed 8/18/21  P. v. Salinas CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LUZ EVELIA SALINAS,<br><br>Defendant and Appellant. | F082342<br><br>(Super. Ct. No. VCF331598)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Melinda M. Reed, Judge.

Allan E. Junker, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kari Ricci Mueller and Melissa Lipon, Deputy Attorneys General, for Defendant and Respondent.

-ooOoo-

---

[*]     Before Franson, Acting P.J., Smith, J. and Snauffer, J.

Defendant Luz Evelia Salinas appeals from an order denying her 2020 motion to vacate a 2016 conviction under Penal Code section 1473.7.[1]  The superior court concluded that Salinas did not meet her burden of showing by a preponderance of the evidence that she failed to meaningfully understand the immigration consequences of her plea and that she was prejudiced.  These conclusions and the underlying credibility determinations were based on the superior court's personal observation of Salinas's testimony.  Applying the independent standard of review, which gives particular deference to factual findings based on the superior court's personal observations of witnesses, we conclude the superior court did not err in denying the motion to vacate based on the failure to establish prejudice.

We therefore affirm the order denying the section 1473.7 motion.

## BACKGROUND

Salinas was born in Mexico in May 1965.  She came to the United States around 1982 or 1983 and became a legal permanent resident in 1990.  At the time of her plea, Salinas had her two daughters, a grandson, and a son-in-law living with her.  Salinas states that if she were removed to Mexico, she would not be able to work there, would not be able to take her family with her, and would have no place to live.  Salinas asserts she was from Guerrero, Mexico, a very dangerous part of Mexico that is corrupt and full of violence.

Salinas's declaration and her testimony did not address many of the personal details provided in *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), *People v. Mejia* (2019) 36 Cal.App.5th 859 (*Mejia*), and *People v. Camacho* (2019) 32 Cal.App.5th 998 (*Camacho*).  For instance, the information did not include (1) the identity of the persons with whom she came to the United States; (2) the persons with who she lived upon arrival; (3) facts about her grandparents, parents, and siblings; (4) the ages and

---

[1]     Unlabeled statutory references are to the Penal Code.

citizenship of her daughters, son-in-law, and grandson; (5) the schools, if any, she attended in the United States; or (6) her employment history.

In February 2016, a felony complaint was filed against Salinas. It alleged that on January 26, 2016, she violated section 483.5, subdivision (a) by manufacturing and offering for sale a deceptive identification document; violated section 472 by forging and counterfeiting a state seal; and violated section 113 by unlawfully manufacturing and selling false government documents—specifically, identification cards, social security cards, and permanent resident cards—with the intent to conceal the true citizenship or resident alien status of another person.

On May 24, 2016, Salinas entered a no contest plea to a violation of section 483.5, selling a deceptive identification document. Salinas was represented at the hearing by retained counsel, Richard Alvarez, and participated with the aid of an interpreter. During the plea hearing, the following exchange occurred.

> "THE DEFENDANT: Good morning.
>
> "THE COURT: Do you feel that you've had adequate time to discuss this case with Mr. Alvarez, including what the People have to prove at trial and possible defenses that you would have to the charges, and are you satisfied with his advice?
>
> "THE DEFENDANT: No contest.
>
> "THE COURT: All right. Do you understand my question to you? I'll be very – I'll go slow.
>
> "THE DEFENDANT: Okay.
>
> "THE COURT: Have you had enough time to talk about all of your options with your lawyer?
>
> "THE DEFENDANT: Yes.
>
> "THE COURT: Do you feel confident in his advice?
>
> "THE DEFENDANT: Yes.

"THE COURT: Are you making this important decision absolutely freely and voluntarily?

"THE DEFENDANT: Yes."

"THE COURT: Do you understand that once you plead in this case, your decision is final and you cannot change your mind?

"THE DEFENDANT: That's fine.

"THE COURT: Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Has your attorney told you that if you are not a citizen, your plea may lead to your immediate deportation, a denial of citizenship or naturalization, or admission into the United States?

"THE DEFENDANT: Yes."

The superior court then informed Salinas of various rights and asked if she understood and voluntarily waived each one of the rights. After receiving an affirmative answer, the court then directed a series of questions to her attorney.

"THE COURT: Mr. Alvarez, have you had an opportunity to discuss the elements of the crimes charged and possible defenses with Ms. Salinas?

"MR. ALVAREZ: I have.

"THE COURT: In your judgment and experience, is she making this important decision freely and voluntarily?

"MR. ALVAREZ: She is, Your Honor.

"THE COURT: Do you believe she understands the important rights that she's waiving, as well as the consequences of her plea?

"MR. ALVAREZ: I do.

"THE COURT: And do you consent to her anticipated decision?

"MR. ALVAREZ: I do."

Salinas pled no contest to a felony violation of section 483.5, subdivision (a). The superior court also took her no contest plea to a misdemeanor charge of receiving stolen property in violation of section 496, subdivision (a). The court accepted the pleas, finding them to be entered knowingly, voluntarily, intelligently, and with the assistance of counsel. The court referred the matters "to probation, with an indicated sentence … being felony probation, 180 days. The sentence in the misdemeanor will run concurrent."

On June 16, 2016, the sentencing hearing was held. Salinas was represented by Alvarez again and used an interpreter. Because the probation report was incomplete, the court held an unreported sidebar with counsel to obtain additional information about Salinas's involvement in the offenses. After that discussion, which disclosed that Salinas was not the primary perpetrator, the court indicated it would abide by the agreement at the time of the plea. The court suspended imposition of a three-year sentence, required Salinas to serve 180 days in the county jail, and imposed a range of conditions on her probation. For instance, she was required to report to the probation office within 72 hours following her release from custody; she was forbidden to change her residence in the County of Tulare or leave California without prior written permission of the probation office or an order of the court; and she was required, immediately upon her release from custody, to participate in a "Moral Reconation Therapy Program" for a minimum of 12 weeks or until the program facilitator and the probation officer agreed she had successfully completed the program.[2]

On November 10, 2020, Salinas filed a section 1473.7 motion to vacate her plea. The motion was "based on prejudicial error on the part of Ms. Salinas' trial counsel

---

[2] These particular conditions are mentioned because they could not be performed if Salinas was taken into custody by Immigration and Customs Enforcement immediately after she served the 180 days in county jail. Thus, it could be argued that the inclusion of such terms created the expectation that Salinas would not be detained and subject to removal proceedings after being released from jail.

damaging her ability to meaningfully understand or defend against the adverse immigration consequences of her guilty plea" and also asserted Salinas had been "deprived of her right to counsel under the provisions of Sixth and Fourteenth Amendments to the United States Constitution and Article l, §15 of the California Constitution." The motion was supported by declarations from Salinas and her new attorney. Her declaration asserted:

> "That when I hired Mr. Alvarez he had asked me about my immigrant status. I told him that I was a legal resident. I let him know that I had concerns about my residency being taken away because of my charges. Mr. Alvarez told me that because I was a lawful permanent [resident] I didn't need to worry. He assured me that everything would be fine and that this would all go away."

Salinas also asserted that she was not aware that accepting the plea could affect her residency or becoming a citizen. In addition, her declaration stated:

> "19. That had I known that my plea could have such severe adverse immigration consequences and that it could result in my removal from the United States and prevent me from becoming a United States citizen, I would have certainly proceeded to trial in my case. My goal has always been to become a United States Citizen. [¶] … [¶]
>
> "21. That if I would have known about the potential immigration consequences to my plea and that I could have had even a small chance of avoiding those consequences by going to trial, I would have taken the chance with trial.
>
> "22. That I was not aware of the immigration consequences of my plea until recently. I was inquiring about becoming a citizen when I was told by people that I know that because of my charges I would not be able to. I made an appointment with [my current attorney] and that is when I learned that [there] were immigration consequences to my plea and that I could be prevented from becoming a citizen and even be deported and lose permanent resident status."

In December 2020, the district attorney filed an opposition to Salinas's motion to vacate her convictions. The opposition argued Salinas had not shown by a preponderance of the evidence that (1) she failed to meaningfully understand and knowingly accept the

actual or potential adverse immigration consequences of her plea or (2) she was prejudiced as required by section 1473.7.

On December 14, 2020, the superior court held a hearing on the motion. Salinas appeared with her attorney in court and was assisted by an interpreter. Salinas testified at the hearing. When asked if she had a discussion with Alvarez regarding her being a legal permanent resident, Salinas answered: "He never said anything to me about that." As a follow up question, her attorney asked Salinas if she remembered telling Alvarez that she was a legal permanent resident of the United States and Salinas answered: "He asked me if I was a resident or if I was undocumented. [¶] And I told him I was a resident. That was the only question I answered regarding that." Then the following exchange took place:

"Q. When you told him that you were a resident, did he say anything to you about that?

"A. No, he never said anything about that. [¶] I asked if I was — I never asked him, also, if I was going to have any problems with that. I never imagined the consequences, either, of doing that.

"Q. Now, at any time before you entered your plea of no contest to these charges, did you ever have a discussion with Mr. Alvarez regarding the immigration consequences of the charges?

"A. No."

Alvarez did not appear at the hearing and did not file a declaration. Nothing in the record indicates he was served with the section 1473.7 motion or opposition. Also, nothing in the record shows he "was given timely advance notice of the motion hearing by the moving party or the prosecutor, pursuant to Section 416.90 of the Code of Civil Procedure." (§ 1473.7, subd. (g).)

The superior court denied the motion, finding that Salinas did not meet her burden of showing by a preponderance of the evidence that she failed to meaningfully understand the immigration consequences of her plea and that she was prejudiced. On

the element of prejudice, the court stated "the prosecutor has shown that the case was strong against [Salinas]. She received a beneficial plea bargain and avoided jail time, which she could have been sentenced to prison, and two other felony charges were dismissed. [¶] Despite her ties to the United States, I find there is insufficient evidence she would have rejected the plea and proceeded to trial, where the defendant has little or no plausible chance of success at trial. It is highly likely the defendant would accept a plea if the prosecution offered one."

In January 2021, Salinas filed a notice of appeal.

## DISCUSSION

### I.  LEGAL PRINCIPLES

In 2016, the Legislature enacted section 1473.7 to make relief available "to certain immigrants who accepted pleas without understanding the immigration-related consequences of such decisions." (*Vivar, supra,* 11 Cal.5th at p. 528 (*Vivar*).) Subdivision (a) of section 1473.7 states:

> "(a)  A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for any of the following reasons:  [¶] (1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.  A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."

The moving party has the burden of proof by a preponderance of the evidence. (§ 1473.7, subd. (e)(1); *Vivar, supra*, 11 Cal.5th at p. 517.)  In accordance with the statutory text, a defendant must demonstrate (1) an "error" occurred, (2) the error was "prejudicial," and (3) the error damaged the defendant's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of the plea.  (§ 1473.7, subd. (a)(1).)

8.

A superior court's decision to grant or deny a section 1473.7 motion is subject to independent review. (*Vivar, supra,* 11 Cal.5th at pp. 526.) Under this standard of review, an appellate court exercises its independent judgment to determine whether the facts satisfy the applicable rule of law. (*Id.* at p. 527.) Independent review is not the same as de novo review because an appellate court may not second-guess factual findings based on the superior court's own observations. (*Ibid.*) Thus, factual findings based on the credibility of witnesses that the superior court heard and observed are entitled to deference. (*Id.* at pp. 527–528.) In contrast, where the facts derive entirely from written declarations and other documents, the superior court and appellate courts are in the same position and deference is unwarranted. (*Id.* at p. 528.) "Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Ibid.*)

II.    SHOWING OF PREJUDICIAL ERROR

For purposes of this appeal, we assume without deciding that Salinas's own error resulted in her not knowing her plea would subject her to removal and permanent exclusion from the United States and her own error is a type of error that satisfies the requirement of section 1473.7. (See *Mejia*, *supra*, 36 Cal.App.5th at p. 871; *Camacho*, *supra*, 32 Cal.App.5th at p. 1009.) Based on this assumption, we consider whether Salinas demonstrated the error was prejudicial.

The term "prejudicial" is not defined in section 1473.7. Its meaning was addressed in *Vivar*, which concluded an error is prejudicial if the moving party "demonstrat[es] a reasonable probability that [she] would have rejected the plea if [she] had correctly understood its actual or potential immigration consequences." (*Vivar, supra,* 11 Cal.5th at p. 529.) In assessing whether a reasonable probability has been shown, courts must consider the totality of the circumstances. (*Ibid.*) Particularly relevant factors include (1) the moving party's ties to the United States, (2) the

9.

importance the moving party placed on avoiding deportation, (3) the moving party's priorities in seeking a plea bargain, and (4) whether the moving party had reason to believe an immigration-neutral negotiated disposition was possible. (*Id*. at pp. 529–530.) Where a moving party asserts that she would have rejected the plea if she had correctly understood the immigration consequences, that assertion must be corroborated with objective evidence. (*Id.* at p. 530.)

Here, the superior court determined Salinas had not carried her burden of demonstrating by a preponderance of the evidence that there was a reasonable probability that she would have rejected the plea if she had understood the immigration consequences. In making this determination, the court impliedly found Salinas's assertions about rejecting the plea lacked credibility. This finding is entitled to deference because the court personally observed Salinas's testimony. (*Vivar*, *supra*, 11 Cal.5th at p. 530.) In addition, this case lacks contemporaneous evidence of (1) the importance Salinas placed on avoiding deportation, (2) her priorities in seeking a plea bargain, or (3) whether she had reason to believe an immigration-neutral negotiated disposition was possible. A potential source of this information is Alvarez, the attorney who represented Salinas at the time of her plea and sentencing. However, Salinas did not subpoena Alvarez to testify at the hearing on the motion and did not obtain a declaration from him. While evidence of personal ties to the United States may provide the requisite contemporaneous, corroborating evidence, Salinas's presentation of information about her ties was not as extensive as the evidence provided in *Vivar*, *Mejia*, or *Camacho*. Her situation is further distinguished from that presented in *Vivar* by the superior court making findings of fact based on its personal observations of Salinas. Based on our independent review and deferring to those findings, we conclude the superior court did

not err in denying the motion to vacate Salinas's convictions on the ground she failed to carry her burden of proving prejudice.[3]

## DISPOSITION

The order denying the section 1473.7 motion is affirmed.

---

[3] Since the statute became effective on January 1, 2017, the Fifth District has received approximately 20 appeals involving motions under section 1473.7, subdivision (a)(1). Counting the affirmance in this case, the 11 appeals from Tulare County have resulted in four affirmances, three reversals with directions to grant the motion, and two reversals for rehearing; the other two appeals are pending.