Filed 3/18/22  P. v. Meza CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LUIS FRANCISCO MEZA,<br><br>    Defendant and Appellant. | B312329<br><br>(Los Angeles County<br>Super. Ct. No. PA038036) |

APPEAL from an order of the Superior Court of Los Angeles County.  David Walgren, Judge.  Affirmed.

Robert Edward Myers for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Luis Francisco Meza appeals the denial of his motion to vacate his conviction pursuant to Penal Code[1] section 1473.7.

In 2001, appellant entered into a plea bargain in which he pleaded guilty to one count of second degree robbery. On February 4, 2021, appellant filed a motion to vacate his conviction pursuant to section 1473.7.[2] The trial court denied the motion based on its own credibility and factual findings following its review of the court file and a hearing at which appellant testified and the court heard argument. Appellant contends that because he established by a preponderance of the evidence that he lacked a meaningful understanding of the adverse immigration consequences of his plea, the trial court erred in denying his section 1473.7 motion to vacate his conviction. We disagree and affirm.

## FACTUAL[3] BACKGROUND

On November 26, 2000, appellant and codefendant Donald Lee McClellan approached two boys (10 and 11 years old) riding bicycles. McClellan pointed a knife at one of the boys and demanded both bicycles. As the victims fled on foot, appellant and McClellan picked up the bicycles and left. The next day, police learned that appellant had pawned one of the bicycles at a pawnshop. Police contacted appellant, who admitted taking and

---

[1] Undesignated statutory references are to the Penal Code.

[2] Appellant also sought relief under section 1016.5 but subsequently withdrew those grounds for the motion.

[3] Appellant pleaded guilty before a preliminary hearing was conducted. These facts are drawn from the probation report and the factual basis for the plea established in the plea proceedings.

pawning the bicycle. Thereafter, appellant turned himself in. The pawned bicycle was recovered undamaged, but the other bike was not recovered.

Appellant stated that he had given a ride to McClellan and they stopped at a liquor store. When appellant came out of the store, McClellan was talking to the two victims. McClellan told appellant to pick up one of the bicycles, and they put both bikes into appellant's car. Appellant pawned one of the bicycles for $35, which he used to buy food. When the detective called him, he turned himself in. He told the detective he had purchased two new bicycles for the victims. But the detective told him it was too late, so he gave the new bicycles to his nephews.

## PROCEDURAL HISTORY AND RELEVANT BACKGROUND

Appellant and his codefendant were each charged with two counts of second degree robbery in violation of section 211. In connection with both robbery counts, it was further alleged that McClellan personally used a deadly and dangerous weapon, a knife. (§ 12022, subd. (b)(1).) Appellant was also charged with petty theft from a pawnbroker or secondhand handler, a misdemeanor, in violation of section 484.1, subdivision (a). The charges exposed appellant to a possible sentence of over six years in state prison.

On January 4, 2001, appellant accepted a plea bargain in which he pleaded guilty to one count of second degree robbery in exchange for a low term sentence of two years in state prison suspended, and formal probation for three years with a year in county jail. On February 15, 2001, appellant was sentenced pursuant to his plea bargain, and the remaining counts were dismissed.

3

The probation officer's report filed February 15, 2001, states that appellant was born in San Salvador, El Salvador, and came to the United States when he was four years old. He became a permanent resident alien of the United States along with his parents when he was eight years old. The report also states that appellant graduated from Manual Arts High School in Los Angeles in 1997. He then attended Bryman College in Reseda where he completed a nine-month course in medical assisting. As of February 2001, appellant had been married for three years, and had four children, three of whom were living (ages four, one and one-half, and eight months; his first child died a day after birth). He separated from his wife in November 2000 and was living with his girlfriend and their three-month-old son for one month before his arrest. Appellant intended to return to his wife upon release.

During the plea proceedings on January 4, 2001, appellant was advised: "If you are not a citizen of the United States, then your plea in this case will result in your deportation, denial of naturalization, denial of reentry in this country." Several times during the explanation of the conditions of the plea and appellant's rights and waivers, appellant indicated he did not understand something. On each occasion, after consulting with his attorney and receiving a clarification from the district attorney, his attorney, or the court, appellant stated he understood. Finally, before joining in the waivers, concurring in the plea, and stipulating to the factual basis, defense counsel said to appellant, "You have asked a lot of questions during this plea. Are you comfortable and ready to go with the plea as it stands?" Appellant replied, "Yes, I am." Counsel asked, "Any other questions you have with me?" Appellant answered, "No, I don't."

In November 2000, when he committed the robbery in this case, appellant was already on 36 months summary probation after having pleaded nolo contendere to a charge of misdemeanor forgery in violation of section 470. In that case, appellant had stolen a blank check from an elderly couple and cashed it for $800.

On October 18, 2003, while on probation in this case, appellant was charged with driving under the influence in violation of Vehicle Code section 23152, subdivision (a). He was convicted and sentenced to 36 months summary probation. Thereafter, in 2012, appellant was arrested and charged with possession of methamphetamine and paraphernalia. Before he accepted a plea bargain on that charge, appellant was advised of the immigration consequences of the conviction.

After the 2012 plea, appellant was taken into immigration custody for 10 months. At that time he was ordered deported but was not removed. Appellant filed a written motion to vacate his plea based on ineffective assistance of counsel.[4] The motion was denied on April 12, 2013.

## DISCUSSION
### The Trial Court Did Not Err in Denying the Motion to Vacate Pursuant to Section 1473.7

Appellant contends the trial court erroneously denied his motion to vacate his conviction because he demonstrated by a preponderance of the evidence that he lacked a meaningful understanding of the adverse immigration consequences of his plea. To the contrary, the record reveals the trial court properly evaluated and considered all the evidence and arguments, and

---

[4] This motion is not part of the record on appeal.

made reasonable and factually supported findings and credibility determinations based on the court file, plea proceedings, and appellant's live testimony.

A. *Relevant proceedings*

Appellant testified at the hearing on the motion to vacate. When he committed the robbery in 2000, he was 22 years old and had been a permanent resident alien since he was eight years old. In 2001, when appellant was considering the People's offer, his lawyer did not explain to him why it was better to accept a plea bargain rather than going to trial and only read aloud from some paperwork about the immigration consequences of a plea without explaining them to appellant. Although appellant told his lawyer he was a permanent resident, his wife was a legal resident, and he had four children who were U.S. citizens, counsel never explained how the plea would affect his residency status.

In 2012 appellant was in federal immigration custody for 10 months after the "paraphernalia case." It was then that he learned he was subject to deportation because of the robbery conviction. Thereafter, appellant has checked in with immigration officials from time to time, but he has never been removed from the country.

Appellant testified that he never would have pleaded guilty to the robbery in this case had he known that his plea would result in deportation or the loss of his permanent resident status. When he entered the plea, he did not understand he could lose his residency. He took the deal because of his family; he was not the one who actually committed the robbery, but he was scared and wanted to "get out of jail as soon as possible" for his children. Appellant explained that he came to this country when he was four years old, and "[e]verything I have is here."

On cross-examination, appellant admitted that as a juvenile he had a petition filed against him for burglary and he was on probation for a forgery conviction when he committed the robbery in this case. He did not recall being advised of any immigration consequences when he entered a plea in the forgery case.

Appellant asserted he had nothing to do with the robbery in this case until he came out of the store and his friend handed him the bike. He did not know that McClellan had threatened the boys with a knife and felt forced to take the bike, but did not know what was actually going on.

Appellant did not remember his lawyer discussing "all the various options" with respect to the plea, but only, "[E]ither you take this, or this is going to happen. But if you take this, . . . this will happen." As a result of the plea deal appellant got probation and served 7 months and 20 days in county jail. While he was on probation, he pleaded guilty to driving under the influence; he did not recall being advised of any immigration consequences of his guilty plea at that time. Appellant did recall being advised of the immigration consequences of entering a plea to possession of drug paraphernalia in 2012. Appellant then admitted that in 2001 his lawyer read something and "they mentioned something to [him]" about the immigration consequences, but he was not told he would be deported. However, later in cross-examination appellant reiterated that he had no recollection of being advised by the district attorney at any time during the 2001 proceedings that if he was not a citizen, his plea would result in his " 'deportation, denial of naturalization, denial of reentry into this country.' "

In 2016, appellant was arrested for using another person's identification and charged with multiple felony counts of identity theft. He entered a plea of no contest or guilty to four felonies and one misdemeanor and was placed on three years of probation.

Following argument, the trial court noted that appellant recalled his attorney "reading paperwork that discussed immigration consequences in some manner." Then, during the plea proceedings, he was clearly and unambiguously advised, " 'If you're not a citizen of the United States, then your plea in this case will result in your deportation, denial of naturalization, or denial of reentry into this country.' " The court went on, "That is what he was told. And as the People noted, he was not shy about asking questions when he wished to ask a question. There was a lot of give and take, a lot of back and forth. He conferred with his lawyer, but he was clearly and unambiguously advised of the immigration consequences."

The court observed that appellant admitted "he wanted to get out of custody as soon as possible, and he accepted the plea agreement which was probation" instead of a possible six years or more in prison. "So I think what the evidence shows is he was willing to take the risk, . . . rather than go to trial . . . [¶] I think he weighed all the risks, and knowing that he could be deported, he chose to get out sooner and run that risk rather than go to trial and get convicted."

The court added that none of the objective, contemporaneous evidence presented corroborated appellant's self-serving statements that he would not have entered the plea had he known he could be deported. Moreover, appellant had "multiple crimes of moral turpitude. It does affect his credibility

to this court. I also find that he has selective memory. He can remember things when he was eight years old, but on more relevant issues as it pertains to being advised of the immigration consequences, he simply cannot recall."

The court expressed sympathy for appellant's predicament, noting that he came to this country as a child and established his entire life here. "But sympathy aside, I need to follow the law, and under the law, the defense has not met their burden. So the motion to withdraw the plea pursuant to 1473.7 is denied."

## B. *Applicable legal principles*

Under section 1473.7, a person who is no longer in criminal custody may file a motion in the trial court to vacate a conviction or sentence where "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1).) Our Supreme Court has explained that "[a] successful section 1473.7 motion requires a showing, by a preponderance of the evidence, of a *prejudicial* error that affected the defendant's ability to meaningfully understand the actual or potential immigration consequences of a plea. (*Id.*, subds. (a)(1), (e)(1).)" (*People v. Vivar* (2021) 11 Cal.5th 510, 517 (*Vivar*).)

After its enactment in 2016, the Legislature amended section 1473.7 to clarify "that a finding based on prejudicial error may, but need not, include a finding of ineffective assistance of counsel." (Assem. Bill No. 2867 (2017–2018 Reg. Sess.) ch. 825, Legis. Counsel's Dig.) "Thus, a person seeking relief pursuant to section 1473.7 need only demonstrate prejudice that he would not have entered the plea had he known about the immigration

9

consequences." (*People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 661 (*Abdelsalam*); *People v. Camacho* (2019) 32 Cal.App.5th 998, 1010–1011.)

According to our Supreme Court, "showing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible. (*Vivar*, *supra*, 11 Cal.5th at pp. 529–530.)

In *Vivar*, the court endorsed independent review by an appellate court following a trial court's ruling on a motion to vacate under section 1473.7. (*Vivar*, *supra*, 11 Cal.5th at pp. 524–527.) Under the independent standard of review, " 'an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' " (*Id*. at p. 527, quoting *In re George T.* (2004) 33 Cal.4th 620, 634.) But the court cautioned that independent review is not synonymous with de novo review, explaining that under independent review "[a]n appellate court may not simply second-guess factual findings that are based on the trial court's own observations." (*Vivar*, at p. 527.) Instead, in reviewing a trial court's section 1473.7 ruling, the appellate court should "give particular deference to factual findings based on the trial court's personal observations of

10

witnesses," but need not defer to the trial court's findings that derive entirely from written declarations and other documents which lend themselves equally to interpretation by the appellate court and the trial court. (*Vivar*, at pp. 527–528 ["there is no reason to conclude the trial court has the same special purchase on the question at issue" when making its findings on documentary evidence; indeed, appellate and trial courts " 'are in the same position in interpreting written declarations' "].) "Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Vivar*, at p. 528.)

### C. *Analysis*

Appellant contends that the trial court erred in denying his section 1473.7 motion despite appellant's credible testimony that he did not understand the immigration consequences of his plea and the contemporaneous evidence showing that he would have fought the case if he had understood those consequences. The record does not support appellant's contention.

During his testimony, appellant acknowledged that, prior to his acceptance of the plea, his attorney read something to him about the immigration consequences of entering a plea. In addition, although he did not recall being specifically advised by the court or district attorney about any immigration consequences, he conceded that "they mentioned something to [him]" about immigration. He insisted, however, that he was never told he would be deported.

Appellant was an active participant in the plea proceeding: When he did not understand something, he spoke up. He conferred frequently with his attorney, and after he received an explanation of a point he gave a clear indication that he

11

understood. As the trial court noted, appellant was unambiguously advised that his plea would result in deportation, but appellant expressed no confusion and gave no indication he did not understand. The transcript of the plea also shows that before joining in the waivers and concurring in the plea, appellant's lawyer confirmed with appellant that he had no further questions. Finally, the court accepted appellant's guilty plea and the waivers, finding they were "knowingly, intelligently, understandingly, expressly and explicitly made."

The trial court could find no objective evidence on the record to corroborate appellant's self-serving testimony. It also found appellant lacked credibility and seemed to have a selective memory for facts that suited him and little recollection of important information about the consequences of his plea. As *Vivar* instructs, these "factual determinations that are based on ' "the credibility of witnesses the [superior court] heard and observed" ' are entitled to particular deference," even if the reviewing court may reach a different conclusion based on its independent examination of the evidence. (*Vivar*, *supra*, 11 Cal.5th at p. 527.)

"A defendant seeking to set aside a plea must do more than simply claim he did not understand the immigration consequences of the plea. The claim must be corroborated by evidence beyond the defendant's self-serving statements." (*Abdelsalam*, *supra*, 73 Cal.App.5th at p. 664; *Vivar*, *supra*, 11 Cal.5th at p. 530 ["when a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences, we have long required the defendant corroborate such assertions with ' "objective evidence" ' "].) "It is up to the trial court to determine whether the defendant's assertion is credible, and the

court may reject an assertion that is not supported by an explanation or other corroborating circumstances." (*People v. Martinez* (2013) 57 Cal.4th 555, 565.)

Here, unlike the defendant in *Vivar*, appellant did not present any objective evidence, such as defense counsel's recollection or notes, or appellant's own letters or documents showing some effort to avoid deportation at or around the time of the plea. (See *Vivar*, *supra*, 11 Cal.5th at pp. 530–531.) Even appellant's own testimony failed to convey that at the time of his plea, appellant "considered his immigration status 'the most important part' of his decision to plead." (*Id.* at p. 530.) To the contrary, as the trial court found, appellant seemed to have "weighed all the risks, and knowing that he could be deported," he took his chances with a plea to get out of custody sooner rather than go to trial and still risk deportation. Indeed, "it was probably a very smart decision because here we are 20 years later and he still hasn't been deported. So there's some who would say his gamble paid off because two decades later, although he was convicted and the conviction stands, he has never been deported even to today's date."

Another important point of distinction between this case and *Vivar* is that in the latter case, the prosecution had offered a plea that would not have subjected Vivar to mandatory deportation, but because he was unaware of any immigration consequences, Vivar accepted the plea that resulted in mandatory deportation. (*Vivar*, *supra*, 11 Cal.5th at pp. 517–519, 531.) By contrast, in this case there was no evidence to suggest the People would have offered and the court would have accepted a plea to an unidentified immigration-neutral offense or sentence.

In sum, appellant failed to carry his burden of establishing by a preponderance of the evidence that he entered a plea that was legally invalid due to prejudicial error.  The trial court did not err in denying appellant's motion to vacate his conviction under section 1473.7.

## DISPOSITION

The order denying the motion under Penal Code section 1473.7 is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.

14