Filed 3/8/23  P. v. Piedrasanta CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078614 |
| v. | (Super.Ct.No. FSB17004464) |
| LIVIN PIEDRASANTA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  William Jefferson Powell IV, Judge.  Affirmed.

U.S. Law Center and Sanjay Sobti, and Conrad A. Aragon, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, and Melissa Mandel and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2018, Livin Piedrasanta pled no contest to inflicting corporal injury on a spouse. In 2021 Piedrasanta filed a motion under Penal Code[1] section 1473.7 seeking to set aside his plea because he was not aware of its immigration consequences. The trial court held an evidentiary hearing on the motion and denied it. On appeal, Piedrasanta argues the court erred by concluding he was properly advised of the immigration consequences of his plea. We affirm.

FACTS

Piedrasanta came to the United States from Guatemala in 2002 as an undocumented immigrant. He has two children, both born in the United States. Both children live with him. He is currently married and was married to another woman prior to 2018. He claims he never left the United States.

In 2017, the San Bernardino County District Attorney charged Piedrasanta by information with inflicting corporal injury on a spouse. (§ 273.5, subd. (a).) In 2018, Piedrasanta agreed to plead no contest to an added second count of inflicting corporal injury on a spouse. In exchange, the court dismissed the first count, and sentenced Piedrasanta to 158 days in county jail and three years' probation.

As part of his plea, Piedrasanta completed a change of plea form. Piedrasanta initialed and signed an advisement on that form stating, "I understand that if I am not a citizen of the United States, deportation, exclusion from admission to the United States, or denial of naturalization *will* result from a conviction of the offense(s) to which I plead

---

[1] Unlabeled statutory citations refer to this code.

guilty/no contest." (Italics added.) Both a Spanish language interpreter and defense counsel also signed the form, averring that they read and explained the form to Piedrasanta. When taking this change of plea, the court asked Piedrasanta whether he had enough time to review his rights, the evidence against him, and possible defenses with his attorney. Piedrasanta said he did. Defense counsel advised the court that articulating a factual basis for Piedrasanta's crime posed an immigration issue, so counsel stipulated there was a factual basis for the plea without adopting specific facts as the basis.

In 2021, Piedrasanta moved to vacate his conviction under section 1473.7. The trial court held a hearing where it heard testimony from Piedrasanta and the public defender who represented Piedrasanta in his plea. Piedrasanta testified that before his plea several different public defenders represented him across nine court appearances. He only met his plea counsel twice. He said everyone in court the day of his plea was in a hurry, his counsel and the judge included. According to him, his counsel told him they had to review and accept the offer quickly "because the Judge had to leave." He said his counsel never asked him for his immigration status and did not explain the immigration consequences of his plea. He said the interpreter went over his plea with him, but "the only thing that was clear was about probation and everything else was just in such a hurry." He claimed he did not recall receiving any advisements from the court either. He said that if he had known of the immigration consequences of his plea, he would have preferred to take his chances at trial. Nevertheless, he admitted that he had an open

3

immigration case and did not tell his lawyer about that case. He also admitted that he knew the plea would cause him to be deported but did not understand that it would also prevent him from being naturalized or re-admitted.

Piedrasanta's former counsel testified that his practice, particularly when a client appeared to have "some type of Hispanic name," was to gather information about their current immigration status and consult with the public defenders' immigration attorney. He said he did that in this case, and the immigration attorney wrote up an immigration advisement for Piedrasanta. He testified that he reviewed the immigration advisement with Piedrasanta using two different Spanish interpreters.

His former lawyer then read the immigration advisement. The advisement noted it was unclear if Piedrasanta had been previously deported, but that in any case United States Immigration and Customs Enforcement (ICE) knew he was present in the country without proper documentation. The advisement went on to say that the charged crime had immigration consequences because it was a violent crime and a crime involving moral turpitude. The advisement explained that a misdemeanor conviction for battery against a spouse in violation of section 243, subdivision (e)(1), would avoid immigration consequences, and that there were some felony charges that would be better for immigration purposes than the charge Piedrasanta faced. The advisement concluded by saying a conviction for corporal injury against a spouse in violation of section 273.5, subdivision (a), " 'is a bad plea for a noncitizen.' " The advisement said that immigration consequences included "mandatory detention with ICE after completion of any local

4

sentence . . . loss of most forms of relief, removal, and up to 20 years in federal prison for return after removal." The lawyer testified that he tried to get the prosecutor to agree to a charge under section 243, subdivision (e), "many, many, many times," without success. He also reviewed his notes, which reflected that he "[d]iscuss[ed] the immigration issues with client . . . . Client wants to do the deal now and hopes that he does not get deported. Based on the victim's showing up with a broken nose and surgery [it] is likely that he may get convicted of [great bodily injury]."

Finally, Piedrasanta's former lawyer also testified that it was his practice to fill out a plea form, read it to his client—through a Spanish interpreter if necessary—and then have the client initial and sign as appropriate. He said he did this with Piedrasanta. He did not experience any difficulties with the Spanish interpreter, nor did Piedrasanta express any confusion.

After hearing argument, the court denied the motion. The court noted that it personally took Piedrasanta's plea. Based on this, the court said it found some of Piedrasanta's representations about the nature of the plea hearing not credible. In particular the court noted that while other judicial officers can sometimes rush, "I tend not to be rushed," and "[t]he concept that everything was rushed is simply not true." The court pointed out that defense counsel referred to an "immigration issue" during the plea hearing, indicating Piedrasanta had discussed immigration consequences with his counsel before pleading. The court found Piedrasanta's claims that he did not hear or understand certain advisements to not be credible, and it found defense counsel's testimony credible

5

and consistent with what it knew about defense counsel's practice. In short, the court found Piedrasanta's testimony "completely unbelievable."

Piedrasanta appealed the denial of his motion.

ANALYSIS

Section 1473.7, subdivision (a)(1), allows anyone not in criminal custody to file a motion to vacate a conviction or sentence if " '[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty.' " (*People v. Rodriguez* (2021) 60 Cal.App.5th 995, 1002.) Where a party moves to vacate their conviction or sentence under section 1473.7, the moving party must show only "that one or more of the established errors were prejudicial and damaged his 'ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his] plea.' " (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1008-1009; see *People v. Mejia* (2019) 36 Cal.App.5th 859 (*Mejia*).) A court should vacate a plea if "the defendant simply proves by a preponderance of the evidence a 'prejudicial error damaging the moving party's ability to *meaningfully understand*, defend against, or *knowingly accept* the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.' " (*Mejia*, at p. 871.)

6

When reviewing decisions under section 1473.7, we exercise our " 'independent judgment to determine whether the facts satisfy the rule of law.' " (See *People v. Vivar* (2021) 11 Cal.5th 510, 523-527.) This is not the same as de novo review. Under independent review, " ' "the credibility of witnesses the [superior court] heard and observed" ' are entitled to particular deference, even though courts reviewing such claims generally may ' "reach a different conclusion [from the trial court] on an independent examination of the evidence . . . even where the evidence is conflicting." ' " (*Ibid.*) However, "[w]here . . . the facts derive entirely from written declarations and other documents . . . '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding." (*Id.* at p. 528.) Thus, we defer to the trial judge's factual findings based on live testimony but need not defer to factual findings based on the trial judge's review of the record.

Based on our independent judgment, we conclude Piedrasanta has not demonstrated any error in his immigration advisements. His former lawyer's testimony was sufficient to allow the trial court to conclude Piedrasanta was properly advised of the immigration consequences of his plea. Indeed, based on defense counsel's testimony, Piedrasanta's immigration advisement was fairly comprehensive. Piedrasanta was told that his plea would result in deportation, that he faced prison time if he attempted to return, and that there were few options to avoid immigration consequences based on the charged acts. His counsel testified that he attempted to obtain a plea to a particular crime that would avoid immigration consequences but was unable to do so. Finally,

7

Piedrasanta was provided advice that made it a reasonable choice for him to decide to plead as he did, which is that, given the likelihood that he inflicted great bodily injury, he was likely to do worse with later offers or conviction at trial. Piedrasanta acknowledged that he understood that his plea carried the risk of deportation, both at the time of the plea and in his testimony at the motion hearing.

Because we find no error in the advice given to Piedrasanta, we need not address whether the advice prejudiced him by damaging his ability to understand or accept his plea. However, his former counsel testified that Piedrasanta said he understood the plea would result in deportation, and Piedrasanta later admitted he knew the plea carried a risk of deportation. While Piedrasanta now claims he misunderstood that the plea would also prevent his re-admission to the United States and naturalization, the fact that he knew he could be removed based on the plea indicates he was aware that the plea carried serious immigration consequences. Piedrasanta's former lawyer testified that he advised Piedrasanta that he could face up to 20 years in prison for return after deportation. Piedrasanta admittedly understood some of the immigration consequences of his plea, and there is evidence to suggest that he was told all of those consequences.

Accordingly, we conclude Piedrasanta has not demonstrated an error affecting his ability to "meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a" plea of guilty under section 1473.7.

8

DISPOSITION

We affirm the order denying Piedrasanta's section 1473.7 motion to vacate his conviction.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:


FIELDS
Acting P. J.


MENETREZ
J.