Filed 11/2/23  P. v. Bustos CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HERIBERTO BUSTOS,<br><br>    Defendant and Appellant. | E078658<br><br>(Super.Ct.No. FSB1501194)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill, Judge.  Affirmed.

Alejandro Garcia for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and A. Natasha Cortina, Deputy Attorney Generals, for Plaintiff and Respondent.

Defendant and appellant Heriberto Bustos appeals from the trial court's order denying his motion to withdraw his plea and vacate his conviction under Penal Code[1] section 1473.7. For the reasons set forth *post*, we affirm the trial court's order.

## FACTUAL AND PROCEDURAL HISTORY

### A. PROCEDURAL HISTORY

On September 10, 2015, an information charged defendant with assault with a deadly weapon under section 245, subdivision (a)(1) (count 1), a felony under section 1192.7, subdivision (c).

On August 25, 2016, defendant pled guilty to assault with force likely to cause great bodily injury under section 245, subdivision (a)(4), in exchange for the dismissal of the charged strike prior and credit for time served. The court sentenced defendant to the low term of two years and released him to parole.

As a result of defendant's assault conviction, on October 13, 2020, deportation proceedings were initiated against defendant. On October 26, 2021, defendant filed a motion to vacate his guilty plea under section 1473.7. On February 8, 2022, after briefing and a hearing on the motion, the court issued a written order denying defendant's petition.

On March 8, 2022, defendant filed a timely notice of appeal. Defendant also filed a motion for issuance of a certificate of probable cause. On March 10, 2022, the court granted defendant's motion and issued a certificate of probable cause.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

2

B.    FACTUAL HISTORY

Around 11:25 p.m. on March 29, 2015, the victim's dogs started to bark in his front yard. When the victim went outside, he found defendant, who was intoxicated, swatting and kicking a rosebush growing on the victim's side of the fence. When the victim asked defendant if he was "okay," defendant told the victim that defendant wanted to give the victim a rose growing on another bush in the front yard. Defendant also started to curse at the victim. When the victim told defendant to go home, defendant challenged the victim to fight; the victim ignored defendant. Defendant then took a beer bottle that he was holding and slammed it on the fence rail. Defendant then threw the bottle at the victim as he was walking back into his home. The bottle struck the victim's jawline and lacerated it. The victim told defendant that the victim would call the police; defendant ran across the street back into his own home.

When sheriff's deputies arrived, they saw a visible trail of blood from the victim's yard to the inside of his home. Paramedics bandaged the victim's jaw. The victim stated that his wife would take him to the hospital.

## DISCUSSION

A.    THE TRIAL COURT PROPERLY DENIED DEFENDANT'S MOTION
       TO VACATE HIS CONVICTIONS UNDER SECTION 1473.7

Defendant contends that the trial court erred in denying his motion to vacate his conviction and withdraw his plea.

3

1.  *LEGAL BACKGROUND AND STANDARD OF REVIEW*

"Penal Code section 1473.7 allows noncitizens who have served their sentences to vacate a conviction if they can establish by a preponderance of the evidence that their conviction is 'legally invalid due to prejudicial error damaging [their] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.' [Citations.]  To establish prejudicial error, a defendant must demonstrate a 'reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences' [citation] and must corroborate any assertions with ' " 'objective evidence' " ' [citation].  We note that a motion to vacate a conviction, in contrast to a direct appellate challenge to the plea itself, is generally filed, as here, after "the individual filing the motion is no longer in criminal custody.' " (*People v. Espinoza* (2023) 14 Cal.5th 311, 316 (*Espinoza*).)

In *Espinoza*, *supra*, 14 Cal.5th 311, the California Supreme Court stated that in order "[t]o prevail under section 1473.7, a defendant must demonstrate that his conviction is 'legally invalid due to prejudicial error damaging [his or her] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.' [Citation]  The defendant must first show that he did not meaningfully understand the immigration consequences of his plea.  Next, the defendant must show that his misunderstanding constituted prejudicial error.  " '[P]rejudical error . . . means demonstrating a reasonable probability that the

defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.' " (*Id.* at p. 319.)

On appeal, "[w]e apply independent review to evaluate whether a defendant has demonstrated a reasonable probability that he would have rejected the plea offer had he understood its immigration consequences. [Citation.] ' "[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citation] When courts engage in independent review, they must give deference to the trial court's factual determinations if they are based on ' " 'the credibility of witnesses the [superior court] heard and observed.' " ' [Citation] But when the trial court's findings 'derive entirely from written declarations and other documents,' the trial court and the reviewing court ' "are in the same position," ' and no deference is owed." (*Espinoza*, *supra*, 14 Cal.5th at pp. 319-320.)

### 2.     *THERE WAS NO PREJUDICIAL ERROR*

To succeed in a section 1473.7 motion, defendant must first show that he did not meaningfully understand the immigration consequences of his plea.

In this case, on October 26, 2021, defendant filed a notice of motion to withdraw/vacate his plea under section 1473.7. In his points and authorities in support of his motion, defendant claimed "I don't remember my attorney asking me anything about my immigration status here in the United States. He never asked me if I had a green card or if I was legal in the United States." Although defendant acknowledged being fluent in English, and that he and his attorney, Randall Isaeff (Isaeff) conversed in English, defendant denied being properly advised regarding immigration consequences.

5

Defendant claimed that Isaeff encouraged defendant to take the plea to avoid prison. Defendant also claimed Isaeff failed to discuss or explain the consequences of his guilty plea on his immigration status; he simply provided defendant with the paperwork to review himself; and advised defendant to nod and answer "yes" to questions from the judge and the prosecutor. Defendant additionally claimed that Isaeff advised defendant that there was no immigration hold, which contributed to defendant's understanding that there were no immigration consequences. Hence, defendant declared that he did not understand the immigration consequences of his plea and would not have entered the plea given his family ties in the United States. Defendant declared that he had lived in the United States since he was nine months old, graduated high school, had four children, and his parents and siblings are either citizens of the United States or have green cards. Defendant included documents supporting his family ties and their dependence on him.

On January 6, 2022, the prosecution filed a brief in opposition to defendant's motion to vacate. In the opposition, the prosecutor noted defendant's extensive criminal history and opportunities granted to him over the years to reform and rehabilitate. Defendant, however, failed to take advantage of these opportunities. The prosecutor provided that defendant had "an 11-page rap sheet chock full of crimes involving drugs, weapons, and violence" before he assaulted and injured his neighbor with a beer bottle. Defendant was also twice subject to deportation proceedings due to his earlier offenses, first in 2003 and then in 2012. "Federal immigration judges cut him some slack in 2003 and again in 2012 because of equitable considerations." In this case, the prosecutor observed that the plea form expressly advised defendant that he would be deported as a

result of the plea. Defendant initialed that specific provision as well the provisions acknowledging that everything was explained to him, he fully understood the terms of the plea, and he had sufficient time to consult with his attorney. Moreover, the prosecutor pointed out that Isaeff also secured a more advantageous disposition than the charged offense. Although the assault with force likely to cause great bodily harm to which defendant pled carried the same sentence exposure as the charged assault with a deadly weapon, the charged offense constituted a serious felony, a strike. Isaeff also negotiated the dismissal of a separately charged battery. The prosecutor explained that defendant could not show a better deal was possible given the charges, the strength of evidence against defendant, and his criminal history. Furthermore, with respect to prejudice, the prosecutor argued it was "unlikely that he would have spurned this offer had he been "properly advised" about deportation." Defendant's extensive criminal history revealed that defendant repeatedly elected to plead and serve jail time, as opposed to going to trial, even where his offenses triggered two separate deportation proceedings.

The prosecutor did not dispute that defendant has family ties in the United States and that he had been in the United States since he was an infant. The prosecutor, however, noted how defendant's conduct reflected how little defendant valued his immigration status and his family. "His criminal history shows a two-decade, reckless disdain for his immigration status, as well as for his family. Look at his domestic violence felony." The prosecutor stated, "Defendant . . . cannot credibly feign ignorance of removal for committing this assault."

At the hearing on the motion on January 20, 2022, the court first established that defendant was out of immigration custody and residing in Mexico. Defendant was not present at the hearing because he could not enter the United States legally.

The People called Isaeff during the plea proceedings, as their first witness. At the time of defendant's plea in 2016, Isaeff estimated that he had conducted at least 100 criminal trials, including at least 10 assault cases. Isaeff estimated that about 90 percent of his cases settled, both at the time he represented defendant and presently.

Isaeff testified that he was familiar with the plea form used in 2016 because he used it on a daily basis. He stated that, when representing noncitizen clients, his practice was to make certain that he communicated with his clients about how certain crimes could or very well would get the clients deported. Isaeff stated that, because he is not an immigration attorney, he made certain his clients understood, depending on what the offer was or deal accepted, that the clients would need to consult with an immigration attorney. He habitually advised his clients that immigration consequences of certain pleas would result in removal, exclusion, and denial of naturalization.

Isaeff recalled that defendant told him of defendant's non-citizenship status early in defendant's case. Although they went over it again on the day of the plea, most of the conversations concerning defendant's immigration consequences occurred earlier in the case. Isaeff stated that this case lasted for about a year. Isaeff testified that he did not recall defendant expressing any immigration concerns. The notes in defendant's file reflected defendant's immigration status and his desire to accept the plea. Isaeff testified: "[A]s I noted on the plea bargain at the time that he entered into the plea he was going to

be . . . given credit for time served and released to state parole.  What we often call a paper commitment under Penal Code section 1170."  Isaeff understood his notes to indicate that defendant  "wanted to take the deal and get out and not end up having to actually be transported to state prison."  Had defendant expressed immigration concerns, Isaeff stated that he would expect that to be reflected in his notes; it was not.

Regarding the plea form, Isaeff testified that he "filled out that plea form and went over it thoroughly with [defendant]."  Isaeff stated that it was his practice to read the entire form and then ask the defendants whether they had any questions.  Isaeff stated that this practice took around 10 minutes, depending on the questions from a defendant.  Isaeff stated that, as he does in all of his cases, he went through and read the provisions one by one to defendant, and explained each line of the form, including the provision about immigration consequences.  Isaeff made sure that defendant did not have any questions.  Isaeff advised defendant, per the plea form, that defendant would be deported.

Moreover, Isaeff stated that during his earlier conversations with defendant, they discussed the possible consequences of a guilty plea.  However, at the time of the plea, Isaeff emphasized that the plea would get defendant deported.  Isaeff explained, "Because my practice was when I talk with a client during a plea bargain, when we got to the part about the immigration consequences, if they told him if you are not a U.S.  citizen, I would tell them on every case, I am not an immigration attorney.  I believe that this will get you deported, but if you need to talk to an immigration attorney . . . we can put it over and do that if you want to do that."  Isaeff testified that his notes showed that the prosecutor had offered the deal earlier.  Defendant rejected the earlier deal.  However, on

the day defendant ultimately pled guilty, defendant asked Isaeff to revive the deal so defendant could accept it.

Responding to defendant's claims in his declaration, Isaeff disagreed with defendant's claim that Isaeff never asked defendant whether he had a green card or whether he was legal in the United States. Isaeff reiterated that he and defendant discussed defendant "being a noncitizen." Isaeff also denied leaving the plea form with defendant and telling defendant to initial the boxes without any explanation. Isaeff could not recall if defendant specifically asked whether there was an immigration hold on him, or that he answered no. Isaeff testified that there was, in fact, no immigration hold on defendant at the time. Isaeff further refuted defendant's claim that he failed to advise defendant regarding his immigration consequences, and told defendant to "nod at the questions from the judge and the prosecutor basically passively to accept everything that was being directed at him."

During cross-examination, Isaeff told defendant's counsel that he was familiar with relevant authority at the time of the plea, such as *Padilla v. Kentucky*[2]. During redirect Isaeff stated that defendant's criminal history was a factor in plea bargaining with the prosecutor; in his professional judgment, Isaeff believed he secured a good disposition for defendant.

After taking the matter under submission, on February 8, 2022, the trial court issued a written amended order denying defendant's petition. The trial court noted that

---

[2] *Padilla v. Kentucky* (2010) 559 U.S. 356.

defendant "is a fluent English speaker," the plea agreement reflected defendant had been properly advised, defendant had sufficient time to consult with his attorney, and defendant understood the immigration consequences of his plea. Thereafter, the court summarized the requirements under section 1473.7 and relevant case law.

In applying the legal principles to the facts in this case, the trial court noted that Isaeff, defendant's attorney, testified that he had 20 years of experience at the time he represented defendant. Isaeff recalled that he negotiated a non-strike disposition on behalf of defendant, instead of the charged strike offense. The trial court found Isaeff to be credible when he remembered (1) defendant told Isaeff that defendant was not a U.S. citizen at the beginning of the case; (2) defendant and Isaeff discussed the immigration consequences of defendant's plea when they went over the plea agreement; (3) Isaeff told defendant "that 'he would be deported if he took this plea,' and 'emphasized to him while going through the form that this plea would get him deported;' " and (4) "[t]his was not a case where counsel failed to appreciate the immigration consequences of the plea and failed to explain them to the defendant." The trial court noted that "[t]o the contrary, Mr. Isaeff correctly believed the Defendant would be deported as a result of the plea and told that to defendant." Moreover, in its amended order, the trial court stated that Isaeff "told the Defendant that he could consult with an immigration attorney and that the taking of the plea could be delayed for him to do so. However, the Defendant was not interested in delaying the disposition and wanted release from custody notwithstanding the adverse immigration consequences that would result from the plea agreement. . . . [T]he Defendant was desirous of taking the plea bargain offered regardless of the expectation

11

he would be deported. Defendant was willing to ignore the immigration consequences so that he could obtain release from custody without having to be transported to state prison."

The court noted that defendant's declaration disagreed with Isaeff's testimony. Therefore, the trial court "found Mr. Isaeff to be a credible and reliable witness. To the extent Mr. Isaeff's testimony was different from matters contained in the Defendant's declaration, the court believes Mr. Isaeff." The court went on to state that not only did defendant's motion fail to provide corroborating evidence, "the evidence affirmatively establishe[d] that the Defendant was aware of the adverse immigration consequences— that he would be deported—but chose to proceed anyway."

Accordingly, in denying defendant's motion to vacate his plea, the trial court concluded: "Mr. Isaeff provided Defendant constitutionally appropriate representation— his performance was not deficient. Further, the court finds that the Defendant has failed to establish prejudice, whether analyzed under *Strickland/Padilla* or section 1473.7. The Defendant understood and knowingly accepted the actual adverse immigration consequences resulting from his plea."

In this case, we need not decide whether the trial court properly advised defendant of the deportation consequences of his plea, and defendant understood the deportation consequences prior to accepting his plea. Even if defendant showed that he did not understand the mandatory immigration consequences of his plea, defendant must show that his misunderstanding constituted prejudicial error. Here, defendant failed to do so.

12

" '[P]rejudical error . . . means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." ' " (*Espinoza*, *supra*, 14 Cal.5th 311 at p. 319.)

In the trial court's order denying defendant's petition—after reviewing the moving and opposing papers, and hearing testimony and argument from the parties at the hearing—the court stated that defendant "was desirous of taking the plea bargain offered regardless of the expectation that he would be deported. Defendant was willing to ignore the immigration consequences so that he could obtain release from custody without having to be transported to state prison." In making this determination, as provided above, the court stated that it believed Isaeff to be a credible witness, and "[t]o the extent Mr. Isaeff's testimony was different from matters contained in the Defendant's declaration, the court believes Mr. Isaeff." The court went on to state that not only did defendant's motion fail to provide corroborating evidence, "the evidence affirmatively establishe[d] that the Defendant was aware of the adverse immigration consequences— that he would be deported—but chose to proceed anyway."

A state crime that categorically qualifies as an "aggravated felony" under federal immigration law makes a non-citizen defendant "subject to mandatory deportation and permanent exclusion from the United States." (*People v. Curiel* (2023) 92 Cal.App.5th 1160, 1174.) Defendant pled guilty to a violation of section 245, subdivision (a)(4), and, under federal immigration law, that crime "is categorically a crime of violence and, thus, an aggravated felony that bars cancellation of removal and asylum." (*Patrao v. Garland*

(2021) 846 Fed.Appx. 509, 510.)  Some state crimes, in contrast, do not carry such immigration consequences.  (See *People v. Coca* (Oct. 16, 2023, E079703) [2023 Cal.App. Lexis 797].)

After our independent review of the record, we agree with the trial court there was no evidence that defendant would not have accepted the plea had he been advised about its mandatory immigration consequences.  As provided above, although defendant declared that he would not have pled guilty had he known about his immigration consequences, Isaeff testified that he was aware of defendant's immigration status from the start of the case, and told defendant that he would be deported if he pled guilty. Isaeff, however, did not state he explained to defendant, that the crime to which defendant was pleading guilty, had mandatory immigration consequences that pleas from other crimes did not have.  Moreover, Isaeff failed to state that he made an effort to seek some other disposition, which would not require mandatory deportation, on behalf of defendant.

Notwithstanding, defendant has failed to corroborate his assertion of prejudice with objective evidence of the prejudice to him, as required under *Vivar* and *Espinoza*. (See *Espinoza*, *supra*, 14 Cal.5th at p. 32 ["[a] defendant must provide ' "objective evidence" ' to corroborate factual assertions"]; *Vivar*, *supra*, 11 Cal.5th at p. 530 ["[w]hen a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences, we have long required the defendant corroborate such assertions with ' "objective evidence" ' "]; cf. *People v. Martinez* (2013) 57 Cal.4th 555, 565 [ "the defendant must provide a declaration or testimony stating that he or she would

14

not have entered into the plea bargain if properly advised. It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances"].)

When the court denied defendant's motion, it found defendant did not establish that, if advised by Isaeff that defendant would be deported due to his plea, he would not have done so. The court found that when defendant pled guilty, his principal concern was avoiding state prison time and being released from custody. The court also noted Isaeff's testimony established that although defendant was offered an opportunity to seek immigration advice before accepting his plea, defendant declined to do so. In defendant's opening brief, defendant contends that even if he "had taken the choice to postpone the hearing and seek advice from an immigration attorney, [he] would have been prejudiced by such a delay. If [defendant] had retained new counsel and thereafter been able to negotiate a plea . . . with the same sentence, [defendant] would have spent more time in custody than the 379 days he had spent up until August 25, 2016. [¶] This would have cost [defendant] at least a few more weeks in custody." The paragraph shows that the alleged prejudice would have been "a few more weeks in custody." Hence, defendant was more concerned about time spent in custody than seeking the advice of an immigration attorney when he had previous experience with deportation proceedings.

In support of his argument, defendant relies on *People v. Mejia* (2019) 36 Cal.App.5th 859 and *People v. Camacho* (2019) 32 Cal.App.5th 998 (*Camacho*).) Defendant's case, however, is readily distinguishable from these cases.

15

In *People v. Mejia*, the reviewing court agreed with the trial court's finding that the defendant failed to establish ineffective assistance of counsel. The court, however, held that the defendant had "established his own 'error' " simply by virtue of his declaration stating that he would never have pled guilty had he known " 'that this would harm me in the future.' " (*People v. Mejia*, *supra*, 36 Cal.App.5th at p. 872.) In part, the court relied on the fact that the trial court "made no express or implied credibility determinations on this point, as the denial was based solely on [ineffective assistance of counsel] considerations." (*Ibid.*) By contrast, in this case, the trial court expressly found defendant's declaration and representation, that he would not have pled guilty had he known of the immigration consequences, not credible in the face of Isaeff's testimony, the record of the proceedings, and defendant's criminal history.

In *Camacho*, in 2009, the defendant pled nolo contendere to possession of marijuana for sale. (*Camacho*, *supra*, 32 Cal.App.5th at pp. 1000-1001.) Prior to entering that plea, the defendant's counsel advised him that relief under section 1203.4 and a subsequent request to reduce his felony to a misdemeanor could " 'certainly help' " with his immigration consequences. (*Camacho*, at p. 1003.) The defendant's counsel's practice at the time was also to advise his clients to seek advice from an immigration attorney. The defendant, however, denied that he was given the advice to consult with an immigration attorney. (*Id.* at pp. 1002, 1003.) After the defendant successfully completed probation, he moved for and obtained relief under section 1203.4, and had the conviction reduced to a misdemeanor. (*Camacho*, at p. 1002.) After receiving that relief, the defendant sought the assistance of an immigration attorney to adjust "his immigration

16

status based upon his marriage [to a United States citizen]." (*Ibid*.)  At that point, the defendant learned that his conviction subjected him to mandatory deportation and prevented him from becoming a legal permanent resident.  (*Ibid*.)  The appellate court held that the evidence presented to the trial court, regarding the advice the defendant received at the time he entered his plea, was sufficient to establish prejudicial error under the 2019 amendments to section 1473.7.  (*Camacho*, *supra*, at p. 1009.)  The court recognized that the trial court did not make any express or implied credibility determination for or against the defendant.  (*Id.* at p. 1009.)  The court also recognized that the defendant's counsel did not understand that expungement under section 1203.4 or the reduction of a felony conviction to a misdemeanor did not have any impact on the immigration consequences of a person's conviction.  (*Id.* at pp. 1004, 1009.)  Finally, the appellate court noted that the defendant did not seek advice from an immigration attorney until after he had taken the steps to expunge his conviction.  (*Id.* at p. 1009.)  Considering all of the evidence, the reviewing court held that the record sufficiently established that the defendant's own error prejudicially affected his ability to meaningfully understand or knowingly accept the immigration consequences of his conviction.  (*Id.* at pp. 1009-1012.)

The facts in this case are distinguishable from the facts in *Camacho*.  Here, there is nothing in the record to suggest that defendant relied on any misrepresentation concerning the immigration consequences of his conviction.  There is nothing in the record to show that defendant relied on anything other than the promise of reduced time in custody when he entered his plea of nolo contendere.  Moreover, as noted above, the

court "found Mr. Isaeff to be a credible and reliable witness. To the extent Mr. Isaeff's testimony was different from matters contained in the Defendant's declaration, the court believes Mr. Isaeff."

Defendant has failed to show any evidence of other crimes, which would not have subjected him to mandatory deportation, to which he could have pled. In the trial court, defendant would have to establish that even if Isaeff had advised him of the mandatory immigration consequences of his particular plea, that he would have been able to plead instead to such other crime. Therefore, defendant failed to demonstrate how he was prejudiced.

In sum, viewing the totality of the circumstances, assuming arguendo that defendant did not receive proper advisements, the trial court properly determined that defendant failed to demonstrate prejudice.

## DISPOSITION

We affirm the trial court's order denying defendant's motion under section 1473.7.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:

McKINSTER _____
Acting P. J.

RAPHAEL _____
J.

18